Michael Anthony Miller

C.D.C.#T-27370/A4-201

P.O.Box 8501

Coalinga,California 93210


Plaintiff/Pro Se



ORIGINAL

**FILED**

SEP 2 8 2009

NANCY MAYER WHITTINGTON, **CLERK**
U.S. DISTRICT COURT

Case: 1:09-cv-01841
Assigned To : Unassigned
Assign. Date : 9/28/2009
Description: Pro Se Gen. Civil

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ANTHONY MILLER, ) | CASE NO. _____ |
| Plaintiff, ) | COMPLAINT |
| vs. ) | Civil Rights ACT |
| B.OBAMA,President, ) | 42 U.S.C.§1983 |
| J.BIDEN,Vice President, ) | |
| B.BOXER,Senator, ) | |
| D.FEINSTEIEN,Senator, ) | |
| A.SCHIFF,Congress Member, ) | |
| J.CASTA,Congress Member, ) | |
| Defendants. ) | |

## GENERAL ALLEGATIONS

1. This is a complaint seeking declaratory and injunction
relief pursuant to 28 U.S.C.§§ 2201-2202,42 U.S.C.§1983 and  Federal
Rules of Civil Procedure.  It is alleged that the defendants and
each of them have breached their oaths by allowing modern slavery
and genocide to be effectuated in the United States under pretense
of penal incarceration.

**RECEIVED**

AUG 3 1 2009

Clerk, U.S. District and
Bankruptcy Courts

## JURISDICTION

2. This action is brought pursuant to Title 42 U.S.C.section 1983. Therefore jurisdiction is proper under Title 28 U.S.C.section 1331 and 1343.

## VENUE

3. A substantial portion of the events giving rise to the claim alleged in this complaint arose in the District of Columbia. Therefore,venue is proper under 28 U.S.C.§1391(b)(2).

## INTRODUCTION

4. This is a complaint for declaratory and injunction relief under Title 42 U.S.C.section 1983 and Title 28 U.S.C. sections 2201 and 2202.,against elected Officials for violations of Plaintiff Michael Anthony Miller's rights to be free from cruel and unusual punishment as protected by the Eighth Amendment of the United States Constitution. Specifically at issue are Plaintiff's rights to be free from exposure to endemic prisons by way of colorable Court orders under pretense of three strikes laws illegally applied to cases that do not meet the criteria and using prison mental illness lables to effectuate false imprisonment. Plaintiff also complains herein about unlawful retaliation by using female sexual predators to rape and file false criminal charges against Plaintiff for reporting female sexual predators, Judges,Prosecutors and Sheriff/Peace Officers who conspire with the female sexual predators who were found to be guilty of conspiracy constituting cruel and unusual punishment. Plaintiff prays for injunctive relief.

2

## PARTIES

5 . Plaintiff Michael Anthony Miller, is a resident of the State of California and born in the free State of Kansas City Kansas, currently incarcerated by the California Pleasant Valley State Prison located at P.O.Box 8501,Coalinga,California 93210.

6 . At all times mentioned in this complaint defendant B.Obama was and is the President of the United States. Plaintiff is informed and believes,and thereon alleges that Defendant Obama is and was responsible for supervision and incarceration of prisoners in the United States,including California. Plaintiff is further informed and believes,and thereon alleges,that defendant Obama was informed by way of prison legal mail about California genocide modern slavery operation as President of the United States with office located at 1600 Pennsylvania Avenue,Washington, D.C.20500.

7 . At all times mentioned in this complaint defendants J.Biden,was and is the Vice President of the United States. Plaintiff is informed and believes,and thereon alleges that Defendant Biden,is and was responsible for supervision of the United States Senate and Senators,who are responsible for protecting and assuring that Civil Rights are not violated and the Constitution by corrupt Officials elected or appointed at the federal levels. The defendant Biden was notified by legal mail about California elected and appointed Officials allowing genocide slavery operatiion to go on uncorrected mailed to defendants office located at 1600 Pennsylvania Avenue,Washington,D.C.20500.

3

8 . At all times mentioned in this Complaint defendants B.Boxer and D.Feinstein was and are United States Senators for the State of California with offices located at Washington,D.C.20510, Plaintiff is informed and believes,and thereon alleges that the Defendants Boxer and Feinstein is and was responsible for oversight of the Judicial,Executive and Prison operations. Plaintiff is further informed and believes,and thereon alleges that the Defendants Boxer and Feinstein were informed by mail that the California Courts and Prisons were operating a modern slavery genocide operation,using the Courts and Prisons to facilitate.

9 . At all times mentioned in this complaint defendants J.Costa and A.Shiff was and are United States Congress Members for the State of California with offices located at Washington,D.C. 20515. Plaintiff is informed and believes,and thereon alleges that the defendants Costa and Schiff was and is responsible for the oversight of Judicial,Executive and Prison operations. Plaintiff i is further informed and believes,and thereon alleges that Defendants Schiff and Costa were informed by mail that California Courts and Prisons were operating a genocide modern slavery operation,using prisons to facilitate.

10 . At all times mentioned in this complaint,each individual defendant was acting under color of State law.

11 . At all times mentioned in this complaint,each individual defendant was acting in their official capacity and in the scope and course of their employment.

12 . All of the defendants,and each of them,are also sued in their individual capacities for the claims alleged in this complaint.

4

13 This matter is an ongoing conspiracy that started in 1987 when Plaintiff Michael Anthony Miller,herein after refer to as Plaintiff was charged with robbery and kidnap,according to case number      . The Public Defender withheld photos of Plaintiff's inuries that could have resulted in a acquittal. To further preclude Plaintiff from prevailing,the Court Clerk and Attorney General's Deputies used abstract of judgments with whiteout on them to fabricate convictions Plaintiff was acqitted of or was charged with,as a ploy to make Plaintiff a habitual criminal.

14 . Plaintiff after exposing the corruption of the Judges,Police and District Attorneys,including the Attorney Generals and their Deputies,Plaintiff was subject to false imprisonment after a jury acquitted Plaintiff of attempted murder according to case no. _____ which the Court and District Attorney after being adviced by law that the attempted voluntary manslaughter charge was barred by the aquittal of attempted murder within the meaning of Penal Code section 664 and California Constitution Article IV section 16(b).

15 . Plaintiff was sentenced to prison irrespective for the attempted voluntary manslaughter that Plaintiff was acquitted of under different language (attempted murder),which penal code section 654 bars sentence and convictions for offenses that may be charged under different statutes,after acquittal. Plaintiff exposed the illegal policy and practices of the Judges,Prosecutors and Peace Officers who have converted their positions into criminal enterprise that has vices like a modern (STAR CHAMBER) according to News article exhibit 1 hereto. From the time the operation was exposed and Plaintiff attempted to get the defendants to probe the corruption,Plaintiff was subject to more false arrest and false imprisonment.

16. Plaintiff was held at Corcoran State Prison and subject
to set up blood sports (fights) set up by corrupt prison guards,which
I worked with F.B.I.agents according to F.B.I.number 44.0 to
cause the blood sports to end and because one of the guards
became an informant I dismissed the charges against the corrupt
guards and as a reprisal I was sent to Atascadero State Hospital
as a Mental Disordered Offender,which is a method used to sway
investigators that Plaintiff was crazy. Plaintiff while held at
the Atascadero Hospital,Plaintiff was forced to be a sex slave to
Nurse,Therapist and Technicians who were female sexual predators
that Plaintiff reported them to the Atascadero Hospital Police.

17. Plaintiff was force to go so far as to marry the sexual
predator Nurse (Bongiwe Proctor) who was the most coning of all
of the female sexual predator females,and because I was not
believed until Plaintiff tape recorded  (Bongiwe Proctor) threats
to send Plaintiff back to prison if Plaintiff refused to continue
being her (Bongiwe Proctor's) sex slave after Plaintiff was
released from the Atascadero State Hospital and proving Plaintiff
was a victim of corrupt Mental Health Psychiatrist,Nurse,Therapist and
Prison officials fabracated mental illness reports according to
exhibit 2 hereto,depicting Plaintiff was released after reporting
the sexual predator (Bongiwe Proctor) and other female sexual
predator Atascadero Hospital employees.

18. Plaintiff was arrested for alleged terrorist threat
based on fabricated report made **by** the sexual predator (B.Proctor) who
was found to have fabricated the terrorist threat charge and did
violate Plaintiff's restraining order according to exhibit 3

6

19. Plaintiff after serving ten months in jail the Pasadena Superior Court Judge T.Schwartz and District Attorney ordered the false terrorist threat charges alleged by (B.Proctor) dismissed after learning the Sheriff Deputies and (B.Proctor) conspired to file the charge according to exhibit 4.

20. Plaintiff was arrested one month after the Pasadena Superior Court Judge T.Schwartz dismissed case no.GA039962,the alleged terrorist threat charge,Plaintiff was arrested a second time after filing a restraining order against the sexual predator (B.Proctor) who this time allege that she (B.Proctor) was the victim of false imprisonment and corporal injury on a spouse after Plaintiff secured a second restraining order against the sexual predator (B.Proctor) who now had the female Sheriff Deputy for the same Sheriff Department who conspired in the terrorist threat case to conspire with a female District Attorney and Lawyer,including Judge T.Schwartz,who refused to cause (B.Proctor's) arrest and prosecution for fabricating the terrorist threat charge,to conspire according to Pasadena Superior Court Case No.GA043414 Plaintiff was sentenced to Prison for 25 to life according to exhibit 5.

21. Plaintiff was ordered release by a Parole Board Member,and the Pasadena Court Judge M.J.Byrne irrespective of the Board finding the case no.GA043414 another case fabricated and (B.Proctor) not credable and that the Sheriff Deputies confirm the injuries of purported bruises and abrasions were self inflicted after (B.Proctor) and Plaintiff were togather. The female Board member refused to cause Plaintiff's release after learning the alleged victim (B.Proctor) was a sexual predator Nurse and the case was dismissed by a Board member on the merits. [See exhibit 6]

# FACTS ABOUT FEDERAL OFFICIALS

a . Plaintiff has been forced to serve the illegal 25 to life term at the endemic Pleasant Valley State Prison subject to incur Valley Fever, and inmates,Officers and Free staff have died or contracted the said disease. [See exhibit 5 Valley Fever report]

b . Plaintiff has maintained prison out going mail records that reflect Plaintiff did send all of the defendants copies of the proof that the Pleasant Valley State prison is being used as a bioterrist weapon against mainly people of color whom experts have deemed People of color are high risk according to exhibit 7.

c . The Federal Magistrate and Judges from the District Courts have allowed the (Star Chamber) genocide operation to go on uncorrected by way of issuing colorable Court orders to prclude the arrest and prosecution of any and all corrupt Judges,Prosecutors, Peace Officers,Congress Members,Senators and other Officials who are perpetrators responsible for facilitating and effectuating the (Star Chamber) (Genocide) operations.

d . The Plaintiff provided the Defendants and each of them proof that their must be hearings for impeachment of the corrupt officials and the prevention of future facilitation of the (Star Chamber Genocide) operations that are allowed by way of defendants and each of their acts of not allowing Plaintiff to be heard and ignoring Plaintiff's complaints that sought each defendant to undertake/exercise their authority to stop the violations of Plaintiff's Civil Rights.

# FIRST CLAIM FOR RELIEF

Violation of Plaintiff's Eighth Amendment Right to be
not Subject to Hazardous Prison Conditions

22. Plaintiff realleges and incorporates by this reference each
allegation of paragraphs 1 through   ,inclusive,as if alleged
herein.

23. Defendants Obama,Biden,Boxer,Feinstein,Costa and Schiff
violated Plaintiff's Eighth Amendment right to be protected from
cruel and unusual punishment in the form of allowing the State of
California State and Federal elected and apointed Officials to
force Plaintiff and other prisoners to serve prison terms in
endemic Pleasant Valley State Prison,by their allowing unnecessary and
wanton exposing Plaintiff to Valley Fever Prison condition as
herein alleged.

24. Specifically,defendants knowingly,maliciously allowed mental
abuse,sadistic exposing Plaintiff to Valley Fever Prison condition
along with other prisoners who have died,which offend public
standards of decency and constitute modern form of attempted
genocide. Under the doctrine of supervisory liability the defendants
are liable for exposing Plaintiff to Valley Fever endemic Prison.

25. Plaintiff is informed and believes,and thereon alleges,that
each defendant in this complaint is in position of authority such
that they could arrange,or order to be arranged,a transfer of all
prisoners,including Plaintiff out of the endemic prison where the
Plaintiff and other prisoners are subject to exposure to Valley
Fever Disease and fearful for well being and safety.

Plaintiff is further informed and believes,and thereon alleges,that in fact each defendant knows of Plaintiff and other prisoners request for probes into the injustice of being forced to serve illegal term in endemic Pleasant Valley State Prison,but failed to facilitate any probe and transfer of all prisoners out on the said endemic Pleasant Valley State Prison.

26. The Defendants acts,as alleged herein,were knowing,willful, malicious,and carried out with reckless disregard for Plaintiff's Federally protected rights.

27. As a direct and proximate result of the defendants'actions herein alleged,Plaintiff is being exposed and continues to be exposed to Pleasant Valley Prison Valley Fever endemic. Plaintiff is entitled to an injunction to prevent the defendants from the deliberate acts of allowing Plaintiff and other prisoners to be exposed to Valley Fever endemic prison conditions.

28.As a further direct and proximate result of all of the defendants'actions herein alleged,Plaintiff suffered,and continues to suffer,severe emotional and psychological distress.

29.There is no adequate remedy at law to protect Plaintiff and other prisoners from the said exposure to the Valley Fever disease,without the equitable relief sought Plaintiff and other prisoners is susciptible to contract Valley fever. The balance of hardships tips markedly toward Plaintiff in that there would be little or no prejudice or harm to the defendants should Plaintiff not be granted an injunction to prevent the defendants from exposing Plaintiff to Valley Fever disease.

## SECOND CLAIM FOR RELIEF

Violation of Plaintiff's Eighth Amendment Right to have
Personal Safety

30. Plaintiff Michael Anthony Miller realleges and incorporates
by reference each of the general allegations of paragraphs 1
through   , inclusive, of the First Claim, as if alleged herein.

31. Defendants have denied Plaintiff and other prisoners Eighth
Amendment right to be free from cruel and unusual punishment in
the form of deprivation of personal safety, thus denying a basic
human need guarantee to prisoners by the United States Constitution.

32. In doing as alleged hereinabove, defendants acted with deliberate
indifferance to Plaintiffs personal safety, and subjected Plaintiff and
other prisoners to unnecessary and wanton infliction of pain, including
psychological and emotional distress, in violation of the Eighth
Amendment and Part I of the United Nations Compendium. Specifically,
defendants were deliberately indifferent to Plaintiff's right to
have personal safety when they intentionally, knowingly, and maliciously
allowed Plaintiff to be exposed to Valley Fever endemic prison.

33. The defendants acted knowingly, wilfully, and with reckless
disregard for Plaintiff's Federally protected rights.

34. As a direct and proximate result of all of the defendants' action
herein alleged, Plaintiff suffered, and continues to suffer exposure to
Valley Fever endemic prison. Plaintiff is entitled to injunction.

## PRAYER FOR RELIEF

WHEREFORE,Plaintiff Michael Anthony Miller,prays for the following relief:

    1. Injunction relief,

    2. Declaratory relief,and

    3. Such further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff Michael Anthony Miller hereby demands a jury trial.

Dated: July 29 ,2009

Respectfully submitted,

Michael Anthony Miller/Pro Se

# UNITED STATES
## DISTRICT COURT

Michael Anthony Miller
        Plaintiff,

VS -

BARAACK OBAMA et al.,
        Defendants.

CASE NO. _____

## EXHIBITS
## #1 - 6
### IN SUPPORT OF COMPLAINT

Michael Anthony Miller
C.D.C. # T 27370
P.O. BOX 8501
Coalinga, California 93210

PLAINTIFF / PARALEGAL Pro Se

## VERIFICATION

I, Michael Anthony Miller, declare:

I am the Petitioner in this matter; an inmate at the Pleasant Valley State Prison located at P.O.Box 8501, Coalinga,California 93210

I have read the Civil Rights Complaint and know of its contents and confirm that the same is correct and true, except for those matters based upon my information,I believe them to be correct and true.

I declare under penalty of perjury that the foregoing is correct and true and was executed on this 29 day of July 2009 ,at Coalinga,California.

MICHAEL ANTHONY MILLER

# EXHIBITS

## TOPICAL INDEX

1. EXHIBIT #1 IS NEWS ARTICLE WHERE PLAINTIFF EXPOSED A STAR CHAMBER OPERATION.

2. EXHIBIT #2 IS COPY OF PROOF OF MENTAL ILLNESS REPORT FABRICATED BY CORRUPT DOCTORS AND SEXUAL PREDATOR NURSES.

3. EXHIBIT #3 IS COPY OF MY PROOF OF RESTRAINING ORDER AGAINST NURSE SEXUAL PREDATOR,

4. EXHIBIT #4 IS COPY OF MOTION AND COURT ORDER DISMISSING FABRICATED CHARGE FILED BY SEXUAL PREDATOR AGAINST ME FOUND TO BE CONSPIRACY.

5. EXHIBIT #5 IS COPY OF ABSTRACT OF JUDGEMENT BASED ON SECOND CHARGE FILED BY SEXUAL PREDATOR NURSE.

6. EXHIBIT #6 IS COPY OF PAROLE BOARD ORDER DISMISSING THE SAME CHARGES FILED BY THE SEXUAL PREDATOR NURSE AND THE RECORDS OF VALLEY FEVER ENDEMIC PLEASANT VALLEY STATE PRASON.



# Jailhouse Lawyer Fights For Rights Behind Bars

**By LARRY OWENS**
*Sentinel Staff Writer*



After 15 years of practicing law, Michael Miller knows a sham when he sees one. He especially can feel it when he is a part of it.

A jailhouse lawyer, Miller says Blacks are being kidnapped off the streets and denied their constitutional rights to fair trials, legal representation and humane treatment. Miller, who has been incarcerated at the Los Angeles Central Jail for the past three years, has been fighting behind bars for justice himself as well as other inmates for quite some time, he says.

He wonders aloud whether anyone is listening. Miller has delayed his sentencing for three years and crooked court proceedings what his time may be running out. He is scheduled to be sentenced March 19 in the Van Nuys Superior Court, but he plans to keep fighting it.

Miller was originally charged with attempted murder.

"Our leaders are sitting back and playing crazy," Miller said. "People like Senator Diane Watson and Assemblywoman Maxine Waters, they act like they don't know what's going on."

What is going on, according to

Miller, is a sweep of Blacks off the streets, unreasonable bail amounts and crooked court proceedings with denying rights of alleged suspects.

Clinton Irving an administrative assistant for the district office of Senator Bill Greene, says somebody needs to help if there are injustices being overlooked.

Harold Hall, who is being tried this week on murder charges, takes the advice of Miller from behind bars. Hall's mother is a constituent in Greene's district and there is a feeling of "duty and obligation" said

*See Jailhouse Page A-13*

---

*[Continued from Page A-1]*

Irving.

"If there is some evidence that he isn't receiving a fair trial, all we can do is invoke the appropriate investigating agencies to have them check out the matter," Irving said. "I understand he is having a hard time receiving his transcripts and that shouldn't be so."

Hall complained early during his preliminary hearing, and while his motions were being filed, for his right to defend himself and to have copies of his transcripts.

Hall is being defended by two public defenders during his trial, thus foregoing his privileges to copies of the transcripts.

Miller says Hall's inability to seek his own council and acquire transcripts are just an example of things going on behind the scenes, away from the public eye.

Miller says there are common illegal organizational techniques that are employed in our courts today to secure convictions, which is a modern sophisticated form of star chambers designed to keep Blacks and Hispanics incarcerated.

The majority of the inmates in jail who are Black or Hispanic are isolated, morally assassinated and precluded from becoming productive citizens by our government subjecting them to star chamber procedure convictions, said Miller.

The star chamber procedures, according to Miller, begin with excessive bails where the accused are labeled or classified as being either a) militant b) jailhouse lawyers c) gang members d) habitual criminals e) drug dealers f) jailhouse informants



**MICHAEL MILLER**
Jailhouse Lawyer

or g) racists, etc.

"The label will travel with you to courts and prisons/institutions, or jail facilities, and the psychology of the labeling system is to give the courts-jail/prison institution officials, or other officials, information regarding the accused. It is then determined whether the accused meets the criteria to be subjected to the star chambers prosecution procedure," Miller said.

The accused are tested mentally, morally, socially and physically while being exposed and forced to defend himself in psychological war games, Miller added.

The process is ongoing, he adds. It has vices ranging from fabricated police reports and altered transcripts to loaded plea bargaining and motions that fall on deaf ears.

"Nobody helps the inmates or the accused," Miller said. "Politicians ignore his mail while his visits, mail and phone calls are monitored by jail officials."



---

EXHIBIT
#1

To Whom It May Concern:

I am a staff writer for the Los Angeles Sentinel Newspaper. Some time ago a man by the name of Michael Miller contacted me while he was incarcerated claiming that he had been falsely accused of charges.

He brought to my attention claims that government had a covert operation that unjustly arrests, tries and convicts black and brown men to long term sentences in prison. The operation was identified by Miller as the "Star Chambers."

After some research, sources have said that they have heard of the operation under the same name and under a different name, but as of yet, there isn't any concrete evidence that this operation exists.

I have documents provided by Miller of his suit against Bill Clinton for his passing the three strikes law, and numerous copied letters from local and state representatives praising Miller for his work in the 90s (these letters have not been verified).

Miller's strong case and documentation has encouraged me to pursue an article which is currently in the making. However, a definite date has not been set.

It also seems strange that several days before a proceedings for his suit against the state for unlawfully detaining him for almost a year, he is arrested again on precarious charges.

I urge that more people listen to Miller to assist him in pinpointing his objectives and being removed from incarceration.

Regards,

Kaia Shivers

**KAIA SHIVERS**
*Staff Writer*

**Los Angeles Sentinel**
Largest Black-Owned Newspaper in the West

*Established 1933*

3800 CRENSHAW BLVD.
(323) 299-3800 Ext. 257
FAX (323) 299-3396



# California Department of Mental Health
## State Hospital Police Services
**P.O. Box 1747, Atascadero, CA 93423-1747**
**(805) 468-2716 (805) 468-2370 (fax)**
*Setting a Standard of Excellence*

*Atascadero*
*Coalinga*
*Metropolitan*
*Napa*
*Patton*

February 24, 2009

Michael Miller
CDC#T27370/A4-201
P.O. Box 8501
Coalinga, CA 93210

Mr. Miller,

On February 17, 2009 we received a letter from you requesting copies of Hospital Police Reports. These reports are confidential and we do not release any information from this department without a Court Order or in accordance with existing California Law. Until such orders are received, we are unable to process your request. Should you have any questions, please feel free to contact me at the above address.

Thank you,

David W. Landrum, Lieutenant
Commander, Support Division

EXHIBIT
#2



CALIFORNIA DEPARTMENT OF

# Mental Health

## Atascadero State Hospital

### HEALTH INFORMATION MANAGEMENT DEPARTMENT
#### P. O. Box 7004, Atascadero, CA 93423

February 23, 2009

Mr. Michael Miller- CDC# T27370
P.O. Box 8501
Coalinga, CA 93210

Subject: Request for Investigative Reports

Dear. Mr. Miller:

This letter is in response to your request addressed to Atascadero State Hospital dated February 13, 2009. In your request, you ask for copies of "...*hospital investigation sexual harassment predator report...*"

The Health Information Management Department can respond to requests for medical record information only. The investigative reports you are requesting are not medical record documents. We do not know if such investigative documents exist; if they do, the investigative documents would be protected by law and not released further without a Court Order.

In your letter you write; "*I have been advised by the Court to ... secure the prison hospital police records and my medical summary and discharge papers to support my petition*." We are supplying you with a copy of your "medical summary and discharge papers" from when you were discharged from Atascadero State Hospital in 1998.

Sincerely,

Roberta Gehring, Director
Health Information Management Department

Attachment

# ATASCADERO STATE HOSPITAL
## FORMER PATIENT REQUEST FOR ACCESS
## TO PROTECTED HEALTH INFORMATION
### ASH, HIMD, P.O. BOX 7004, ATASCADERO, CA  93423
#### PH: 805-468-2268  /FAX: 805-468-3042

**FORMER PATIENT SECTION** –Complete form, sign and date. Return to above address.

BIRTHDATE 10-19-55          SOCIAL SECURITY NUMBER:_____ CDC-R# T27370

AT#  046481-8 _____ A: 02-25-97/D: 07-08-98 ___

NAME/ADDRESS:

Mr. Michael Miller/CDC# T27370
P.O. Box 8501
Coalinga, CA  93210

Check applicable box:        _____ I am requesting **an appointment** to come to ASH & read my medical records.
_____ I am requesting **photocopies of medical record documents** checked below,
and understand that I will be charged ten cents ($0.10) for each copy made.

**\*Check all applicable boxes of patient information to be you are requesting be photocopied and sent to you:** ___ .

| | | |
|---|---|---|
| ☐ History & Physical Exam | ☐ Admission Psychiatric Evaluation | ☐ Other |
| ✕ Discharge Summary  03-13-98 | ☐ Psychological Evaluation | |
| ☐ Social History | ☐ Legal Information | |
| ☐ Treatment Plan | ☐ Medical Assessments | |
| ☐ HIV Tests Results | ☐ H&P / Diagnostic studies | |

**Signature:**_____**see attached**_____**Date:**_____**02-13-09**_____

Patient/Legally Responsible Person

**HIMD:** Date "Former Patient Request for Access to Protected Health Information" received:     02-17-09

**MEDICAL DIRECTOR** - In accordance with the Health Information Portability and Accountability Act.

X̸ FULL APPROVAL:     Patient's may review and/or receive photocopies of requested documents.

___ PARTIAL APPROVAL: Patient may review and/or receive selected photocopies of medical record
documents as follows:_____.

___ SUMMARY:     Patient will be provided a summary of the requested information in lieu of
approving access to and/or copies of the actual medical record.

___ *ACCESS DENIED:     Disclosure of protected health **The access requested is reasonably likely to
endanger the life or physical safety of the individual or another person"** Per
the Health Information Portability and Accountability Act. The following is a
description of the specific adverse or detrimental consequence(s):_____

**Signature:** _____     **Date:** _____

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY   DATE: 03-13-98

Program II, Unit 14

Reason for Review: 2962 PC Placement Evaluation/Discharge Summary

Date of Discharge: _____7-8-98_____

**Confidential
Patient's Copy**

## 1. IDENTIFICATION DATA:

Michael Anthony Miller is a 42-year-old (DOB: 05-31-55), married, Muslim, African-American male admitted to Atascadero State Hospital (ASH) on 02-25-97, pursuant to Section 2962 of the Penal Code (PC), Mentally Disordered Offender (MDO). His California Department of Corrections' (CDC) number is C-57302. The instant offense is violation of PC 664/192, attempted manslaughter. The circumstances of that offense were that on 12-05-87, following a domestic altercation with his wife, the patient armed himself with a handgun and fired approximately six rounds at his wife. She was struck once in the abdomen and was hospitalized in intensive care for two weeks. The patient's Controlling Discharge Date (CDD) is 02-25-00.

## 2. PRIOR HISTORY:

(L. Logan, L.C.S.W., 02-26-97) The patient did provide some background information. He stated he was born in Kansas City, Kansas, one of ten siblings in his family, having six brothers and three sisters. He stated he was raised in Kansas City and Chicago during his early years. He was alternately raised by his mother, but at times would go live with his uncle in Chicago. The family apparently moved to California some time in 1964 when the patient was nine years old. He indicated that he stayed in California for short periods of time, but would periodically go back to Chicago to live with his uncle. The patient stated that his mother worked as a nurse, but at times worked as an aid to a senator doing "welfare rights work." The patient stated that he did not have contact with his father as a child, but he did "see him when he was an adult." The patient did not provide much specific information about his childhood except to say that he had a "normal childhood." He denied that there was any family history of mental illness or substance abuse.

The patient was grandiose in describing his educational history. He initially stated that he

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY  DATE: 03-13-98

"majored in Political Science and was a Juris Doctorate." When asked where he went to law school he initially stated that he went to "Trade Tech College," but then stated, "I don't want to talk about that." He denied having any history of head injuries during which he lost consciousness, but he did receive a blow to the head by police several years ago. He also reported having a mini-bike accident as a child, but he did not lose consciousness as a result of that incident.

The patient reported that he is currently married and he stated that he has been married since 1980. It is not known if that is reliable information. He stated he has a 15-year-old daughter and a 23-year-old son. These children are from different relationships. He indicated he does have contact with both of his children.

The patient's records reflect that he was once treated with Mellaril while in CDC, but he has apparently not taken medication on a regular basis. He is described as having a "severe delusional disorder with paranoid and persecutory content." He has received evaluations at California Medical Facility (CMF) - Vacaville, but he has refused psychiatric treatment. The patient reported that his sexual orientation is heterosexual."

The patient stated that he has had numerous types of employment including being a mechanic, doing legal work, working in real estate, and doing "income taxes. It is not known if the patient has ever maintained regular employment. He is not a service veteran and he has never received Supplemental Security Income (SSI) benefits.

The patient has no history of suicide attempts or suicidal ideation. He did report that he would tell staff members if he began having thoughts of hurting himself.

The patient does have a history of assaultive behavior within the California Department of Corrections. He was noted to write threatening letters to public officials in April, 1996, and, in fact, wrote a threatening letter to the governor. He has also exhibited threatening behavior towards other inmates and towards staff members while in CDC. The patient received an Article 115 in December, 1993 for spitting on a staff member.

The patient does have a long history of criminal behavior and he apparently was first arrested as a juvenile. His adult arrests have included burglary, possession of dangerous drugs, assault with a deadly weapon, battery, grand theft auto, receiving stolen property, possession of a controlled substance, grand theft person, and kidnaping with a firearm. The

Confidential

Patient's Copy

CONFIDENTIAL PATIENT INFORMATION SEE W & I CODE SECTION 5328

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY  DATE: 03-13-98

patient has spent time at Pelican Bay State Prison. He indicated that this is his second prison term.

During this interview the patient totally denied using drugs or alcohol. He even denied that he has had any prior experimentation with drugs or alcohol. His records reflect that he may have had a history of using alcohol and cocaine. It is not known if he has participated in inpatient or outpatient substance abuse treatment programs, or if he has used intravenous drugs.

3. CHIEF COMPLAINT/REASON FOR ADMISSION:

Reference above.

4. MENTAL AND PHYSICAL STATUS ON ADMISSION:

(D. Fennell, M.D., 02-25-97)  Examination shows a rather tall, well-developed, Black male, with dreadlocks and with marginal grooming. His speech is somewhat loud, but not pressured, English without impediment, and no increased latency periods. His motor activity shows no psychomotor agitation or retardation. He has a rather intense, staring type of eye contact and has an angry facial expression. He has no bizarre or stereotyped movements. He refused to answer orientation questions. His mood is angry, hostile, and his affect is very intense but overall somewhat constricted. His mental content is fixed, primarily on legal issues. He states that he will not talk with us unless legal papers are obtained from property which were sent down from Folsom Prison. Patient will not answer questions about suicidality or homicidality, and he is preoccupied with legal things and states, with probably a delusional thinking, about people being involved in a conspiracy against him and claims that the prison interviewer was involved in a conspiracy but was not aware of it. Patient also implied that a lot of motivations for treatment were racist-based. The patient's thought processes are somewhat tangential. Unable to assess him for memory and he also does not answer general knowledge questions. Cognition and comprehension appear to be somewhat impaired by his preoccupation with his paranoid ideation. He did not answer abstracting questions, wouldn't cooperate with counting or calculating. Judgment is impaired due to his delusional thinking. Insight is very poor. Patient's strength appears to

CONFIDENTIAL PATIENT INFORMATION - SEE W & I CODE SECTION 5328
Confidential
Patient's Copy

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY   DATE: 03-13-98

be that he has not recently been assaultive. Level of dangerousness would be considered moderate because of his paranoid ideation.

Summary: The patient is a 41-year-old, Black, widowed male with a long history of delusional disorder, paranoid thinking. He did acquire several 115's for assaultive behavior while in prison. He tends to be quite misinterpretive of reality because of the distortion of his paranoid delusional thinking. He sees conspiracies and hostile motives all around him, and has reacted in what he perceives as a like fashion. It also appears that the patient has had some substance abuse history which he is totally denying. He has been totally noncompliant with medication treatment in the past, except for a very short history of Mellaril treatment.

Diagnosis on Admission:

| Axis I | 297.1 | P - | Delusional disorder, persecutory type. (Versus) |
| | 295.30 | PT- | Schizophrenia, paranoid type. |
| | 304.80 | - | Polysubstance dependence (including alcohol and cocaine, and possibly methamphetamine). |
| Axis II | 301.9 | - | Personality disorder, not otherwise specified, with antisocial, narcissistic, and paranoid traits. |
| Axis III | | - | Positive PPD, by history, treated with INH. |
| Axis IV | | - | Severe stressors secondary to ongoing incarceration and MDO program. |
| Axis V | 35 | - | Current Global Assessment of Functioning (GAF). |
| | 40 | - | Highest GAF in past year. |

5. HOSPITAL COURSE AND PROGRESS:

Mr. Miller was initially admitted to Unit 9 following his stay on the admission unit. Because of difficulties he was creating on Unit 9, he was then transferred to Unit 15. On 09-09-97, he was transferred to Unit 14 and has remained there since the time of this dictation. He currently holds a Patient Privileging System (PPS) level 3, though during the past year he has lost his level on at least two occasions for violations of various hospital rules. He is not holding any type of job at this time. His group attendance has generally been adequate, although he has refused groups on occasion. Initially, he refused to go to any type of substance abuse treatment and said that he did not have any type of substance abuse

CONFIDENTIAL PATIENT INFORMATION - SEE W & I CODE SECTION 5328

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY   DATE: 03-13-98

problem. He was told that the team felt that it was important that he did receive substance treatment, and initially he did agree to engage in the treatment and did attend some sessions. However, at this point he has been refusing to attend the 12-Week Substance Abuse Day Treatment Program. The last time he was placed in restraints was nearly one year ago (03-20-97). That incident involved the patient becoming racially provocative, inciting another patient to physically attack staff. The patient was defiant and refused to take direction and was placed in full bed restraints. It should be noted that since that incident, Mr. Miller has been accusing the Unit 9 staff of having put him into restraints "illegally" and having done it for "racist" reasons. He totally minimizes the behavior that he engaged in which led to him being placed in restraints. In general, Mr. Miller has displayed numerous behavioral problems, some of which stem from his personality disorder, and others which stem from his underlying severe mental disorder. He frequently tests limits. He often accuses staff and other patients of being racist when there does not appear to be any type of racial overtone to the behavior that he is describing. In the past, he has often referred to female staff as "bitches." He is frequently provocative with other patients and staff, saying things that may not overtly violate hospital rules or stated in a manner and tone of voice designed to provoke. He is quite litigious--he is always filing patient complaints and threatening staff with lawsuits. He makes frequent references to behaviors that are supposedly illegal that the staff engage in. Mr. Miller has made numerous allegations of staff misbehavior and various conspiracies perpetrated by the staff. The hospital special investigator has investigated all of the patient's complaints of mistreatment and the patient representative has also evaluated all of the patient's complaint forms. Mr. Miller has received numerous behavioral notes during the past year. Most of these have been for relatively minor behavioral problems, but when taken as a group, they represent evidence of significant pathology.

Perhaps the most significant events that occurred in the last few months involved the fact that Mr. Miller admitted surreptitiously tape recording conversations with approximately ten staff members in the hospital. He did this despite knowing the fact that it was strictly against hospital rules for a patient to have any type of recording device. Evidently, he may have gotten the tape recorder from the library by sneaking it out under his shirt. In any event, Mr. Miller presented myself and the special investigator with copies of recording tapes that he had made. He apparently sent the original tapes to his sister who then had copies made and returned them to him. One of the tapes had a conversation with me; he alleges that the conversation with the undersigned and with other staff members provided solid evidence of various conspiracies that were occurring in the hospital. I listened to these tapes and found no evidence of any type of "conspiracies" or other inappropriate behaviors by staff

CONFIDENTIAL PATIENT INFORMATION - SEE W & I CODE SECTION 5328

Confidential
Patient's Copy

RCCP/DS
03-13-98

MILLER, Michael Anthony
046481-8

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY  DATE: 03-13-98

members. It struck me that his interpretation of the conversations on the tape were a function of his thought disorder. It became clear from his analysis of this situation and other statements he had made that he was extremely paranoid and had a severe formal thought disorder. For this reason, he was placed on risperidone on 11-21-97. The risperidone was gradually increased up to 6 mg per day. It is my assessment and the assessment of the staff, that Mr. Miller has shown improvement on this medication. The patient himself reports that he feels less anxious and suspicious taking the medication. Initially, he adamantly refused to take any type of psychotropic medication and alleged that it was a violation of his constitutional rights to be forced to take medication. He denies any significant adverse effects from the medication.

**Current Medications:**

**Risperidone 6 mg qd.**

Below, I will review some of the more significant behavioral notes that have occurred during the last four to five months:

**10-02-97:** Mr. Miller made a threat to the unit social worker. According to the unit social worker, he said to him, "Do you want a piece of this?" He then pointed to himself.

**10-02-97:** "As this staff member walked across day room, the patient was pacing and stating loudly, 'These motherfuckers want to play with me--let the games begin--I'll show them just how bad I can make it.' The patient appears hostile and agitated."

**10-02-97:** "The patient was standing near doorway to day room when a peer walked through to get to his noon meds. This patient yelled at peer stating, 'Don't brush against me or I'll file a assault charge on you too--that goes for all of you.' . . . The patient then started yelling 'You racist motherfuckers--you motherfucking racist pigs, staff I know what you're doing.'"

**10-03-97:** "As this staff walked across day room, this patient stated very loudly, 'You fucking racist pig--nothing but fucking racist.'"

**10-08-97:** Mr. Miller made more provocative racial accusations.

**12-17-97:** The patient was hostile and agitated. He accused the unit psychiatrist who was walking through the day room of threatening him, although no words had been exchanged.



-6-

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY  DATE: 03-13-98

## 6. MENTAL STATUS AT TIME OF DICTATION:

Mr. Miller appears as a tall, muscular individual who is somewhat aloof and quite guarded and hypervigilant in his nonverbal behavior. There is no evidence of abnormal involuntary movements. His facial expression varies from somewhat flat to expressing inappropriate smiling and laughter at times. He often makes a staring type of eye contact. His grooming and hygiene are good. He is fully alert and oriented times three. His speech is generally well articulated. He generally speaks with somewhat pressured speech. His speech is often disorganized and rambling, disjointed, and fragmented. It is frequently circumstantial and at times tangential. His mood is often anxious and depressed, and irritable. Affect is generally full but is often inappropriate and labile. He denies suicidal and homicidal ideation. He denies auditory and visual hallucinations. Paranoid ideation is present as well as paranoid delusions. These will be discussed in greater detail in Section 7 below. There is also evidence of grandiosity. His cognitive functions appear intact and he appears to be of at least average and possibly above average intelligence. His judgment is poor and his insight is poor. He does not appear to represent a current or immediate risk of suicidal or homicidal behavior.

## 7. CURRENT LEGAL STATUS AND REASON FOR RELEASE:

Mr. Miller is currently being held under the auspices of Section 2962 of the Penal Code, Mentally Disordered Offender. It is the unanimous opinion of the Unit 14 treatment team that Mr. Miller continues to meet PC 2962 criteria.

Mentally Disordered Offender (MDO) criteria relevant to the annual recertification:

**Criterion One** - The patient has a severe mental disorder.

It should be noted that there has been some controversy as to the exact nature of Mr. Miller's psychopathology. Dr. Berent, one of the psychiatrists who treated the patient previously, apparently felt that Mr. Miller suffered from a paranoid personality disorder rather than a more severe Axis I disorder. After reviewing all of the records made available to me, it is my opinion that Mr. Miller does suffer from a severe mental disorder. This disorder is either a delusional disorder or paranoid schizophrenia. It is my current opinion that he suffers from paranoid schizophrenia. The primary symptoms of this disorder are his paranoid delusions and his thought disorder. In regard to questions about Mr. Miller's

Confidential
Patient's Copy

CONFIDENTIAL PATIENT INFORMATION - SEE W & I CODE SECTION 5328

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY  DATE: 03-13-98

mental disorder, I would refer the reader to the Forensic Report written by Dr. Osran on 05-22-97. Dr. Osran eloquently delineates the various signs of Mr. Miller's severe mental disorder present at the time of his evaluation. It should also be noted that Dr. Leo Kelly consulted on 12-05-97 also felt that Mr. Miller suffers from a severe mental illness and that psychotropic medication was indicated. During the past year, there have been numerous signs of Mr. Miller's mental disorder. First of all, he believes that he was placed in Atascadero State Hospital because of his attempt to "blow the whistle" at the California Department of Corrections while he was in prison. He believes he was set up and eventually transferred to Pelican Bay because of various conspiracies that were occurring at the prison. His claims appear unlikely. He has also recently claimed that he was forced to have sex with at least two female staff members at Atascadero State Hospital. He claims that he was afraid that if he did not have sex with them he would suffer consequences. If he refused. Interestingly, he claims that one of the consequences that he would be forced to face would be transfer to Unit 14 where the psychiatrist (myself) would force him to receive medication. He also accused this writer of also having sex with a female staff member who he was having a relationship with. He alleges that I was jealous of his relationship with her and that I decided to punish him for that relationship by placing him on medications. The entire episode involving Mr. Miller attempting to tape record various staff members to prove various conspiracies is also indicative of his paranoid delusions. He alleges that these tapes prove a variety of "illegal" admissions by various staff members. However, he has grossly misinterpreted what these tapes say, and this is evidence to me of his thought disorder and paranoia. Other symptoms that he displays include a lack of insight into his mental illness. He denies he has a mental illness or need for medication. He shows evidence of thought disorganization, pressured speech, grandiosity, and excessive and inappropriate hostility.

It should also be noted that a large sheaf of documents that Mr. Miller has written were turned in to the staff. I reviewed these documents and they show additional evidence of Mr. Miller's severe mental disorder. Most of these documents are legal briefs and papers that he has filed with the court system. In one of the documents he states the following:

I, Prince Michael Anthony Miller, declare under penalty of perjury, the following: I am the heir of the throne of King David of Israel representing the remnant 13 tribes of Israel in the world. I bring this case to the forum of the International Court of Justice to obtain the legal rights to reoccupy and claim properties not legally occupied by squatters and their heirs who are born in Israel only.

CONFIDENTIAL PATIENT INFORMATION - SEE W & I CODE SECTION 5328

RCCP/DS
03-13-98


Confidential
Patient's Copy  - 8 -

MILLER, Michael Anthony
046481-8

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY    DATE: 03-13-98

Another document involved a suit that Mr. Miller filed against the President of the United States, Bill Clinton. He filed this document with the United States District Court. The response of the court was as follows:

> "Plaintiff's allegations that the President of the United States and other high-ranking political officials conspired to racially discriminate against him in part to punish plaintiff for his involvement with Lincoln's issuance of the Emancipation Proclamation during the Civil War, constitute delusional and frivolous claims."

Other documents along these lines can be found in the patient's chart under "Miscellaneous Section".

**Criterion Two** - The patient's mental disorder is not in remission as evidenced by those symptoms described under Criterion One (above). In addition, Mr. Miller cannot be kept in remission without treatment as evidenced by the fact that during the past year he made a serious threat of substantial physical harm and has failed to voluntarily follow the treatment plan.

As noted in section 5 above, on 10-02-97 the patient made a serious threat to the unit social worker. He has failed to voluntarily follow the treatment plan in a number of ways. On 12-17-97, he walked out of his ninety day treatment planning conference. He has made frequent racial accusations and has attempted to incite other patients and staff with these statements, despite the fact that he has been told that this is against hospital rules. He has refused to attend substance abuse training. Finally, he utilized a tape recording device to surreptitiously tape record numerous conversations with staff members.

**Criterion Three** - As a result of this severe mental disorder, the patient represents a substantial danger of physical harm to others. Mr. Miller has a long criminal history and suffers from an antisocial personality disorder. He appears to have no remorse or guilt or shame about any of his criminal acts and does not have any empathy with his victims. He is an extremely paranoid individual and this is a dangerous symptom because he has shown that he takes his beliefs quite seriously and it is my belief that he would easily act on his paranoid ideas. He has shown some improvement by taking medication, but it is extremely doubtful that he would take medication if left to his own choice. He has no insight into the fact that he has a severe mental illness. He has shown that he has a low frustration tolerance and is hypersensitive to criticism, which also makes him vulnerable to acting out.

CONFIDENTIAL PATIENT INFORMATION - SEE W & I CODE SECTION 5328

RCCP/DS
03-13-98


Confidential
Patient's Copy    - 9 -

MILLER, Michael Anthony
046481-8

TITLE: RECOMMENDED CONTINUING CARE PLAN/DISCHARGE SUMMARY   DATE: 03-13-98

He is easily led into hostility and particularly without medication, shows evidence of a continual significant level of hostility. He has failed to follow the hospital rules and has been defiant and even proud of the fact that he has tried to get away with such violations.

As a result of his severe mental illness, Mr. Miller cannot be safely and effectively placed in the community at this time. Mr. Miller was last seen by Gateways Conditional Release Program (CONREP) on 10-27-97. The evaluator felt that Mr. Miller was not ready for outpatient treatment. The evaluator stated, "It would be ludicrous to recommend transition to a less restrictive environment such as CONREP until Mr. Miller becomes more open to treatment intervention so that he could begin to gain insight into his mental illness and how to prevent re-offence."

8. <u>FINAL DSM-IV DIAGNOSIS</u>:  (Revised 09-10-97)

Axis I  295.30  P   -   Schizophrenia, paranoid type.
       305.90  S   -   Polysubstance abuse.
Axis II 301.7         -   Antisocial personality disorder.
Axis III              -   Positive PPD, by history, treated with INH.
Axis IV               -   Incarceration difficulties and legal preoccupations.
Axis V           45   -   Current  GAF.

9. <u>RECOMMENDATIONS FOR PHYSICAL AND PSYCHIATRIC FOLLOW-UP</u>:

Mr. Miller needs continuing inpatient treatment in a locked secure facility.

10. <u>RECOMMENDATION</u>:

Retain and Treat.

James Dietch, M.D.
Staff Psychiatrist

JD:mp
D 03-13-98/1608
T 03-16-98/1530
8013

CONFIDENTIAL PATIENT INFORMATION - SEE W & I CODE SECTION 5328

Confidential
Patient's Copy

RCCP/DS
03-13-98

- 10 -

MILLER, Michael Anthony
046481-8

ANTHONY MILLER
CALLE SUAVE
PASADENA, CALIFORNIA 91007
FEE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF _LOS ANGELES_
306 WALNUTE
PASADENA, CALIFORNIA
CIVIL

PETITIONER/PERSON TO BE PROTECTED: _Michael Miller_

RESPONDENT/PERSON TO BE RESTRAINED: _Bongtwe_

## PROOF OF SERVICE

FOR COURT USE ONLY

**FILED**
LOS ANGELES SUPERIOR COURT

JUN 2 9 2000

JOHN A. CLARKE, CLERK
BY C. REYES, DEPUTY

| HEARING DATE | TIME | DEPT., ROOM OR DIVISION | CASE NUMBER |
|---|---|---|---|
| 6-29-00 | 8:30 Am | K | BD 027658 |

## PERSONAL SERVICE

**Instructions:** After having the other party served with a copy of the document identified in Item 1, attach a completed Proof of Service to the original or to a true copy of the original and give it to the clerk for filing. Neither the petitioner nor the respondent, nor any person protected by these orders, can serve these papers.

1. I served a copy of the following documents (check the box before the title of each document you served):
   a. ☐ Order to Show Cause and Temporary Restraining Order (CLETS) (Domestic Violence Prevention) with Application and Declaration for Order (Domestic Violence Prevention) and blank Responsive Declaration to Order to Show Cause (Domestic Violence Prevention)
   b. ☐ Income and Expense Declaration with blank Income and Expense Declaration (Family Law)
   c. ☐ Financial Statement (Simplified) with blank Financial Statement (Simplified) (Family Law)
   d. ☐ Declaration Under Uniform Child Custody Jurisdiction Act (UCCJA)
   e. ☐ Application and Order for Re-issuance of Order to Show Cause (Domestic Violence Prevention)
   f. ☐ Restraining Order After Hearing (CLETS) (Domestic Violence Prevention)
   g. ☐ Findings and Order After Hearing (Family Law, Domestic Violence Prevention, Uniform Parentage)
   h. ☐ Petition to Establish Parental Relationship with Summons with Standard Restraining Order (Paternity) and blank Response to Petition to Establish Parental Relationship (Uniform Parentage)
   i. ☐ Order to Show Cause with Application for Order and Supporting Declaration; blank Responsive Declaration to Order to Show Cause or Notice of Motion (Family Law-Uniform Parentage)
   j. ☐ Other (specify):

2. Person served (name):

3. By personally delivering copies to the person served, as follows:
   (1) Date: 6/28/00          (2) Time: 11:30
   (3) Address: 1237 SIERRA BONITA PASADENA CA

4. At the time of service I was at least 18 years of age, not a party to this action, and not a protected person in any of the orders.

5. My name, address, telephone number, and, if applicable, county of registration as process server and registration number are (specify):

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

6/28/00

(TYPE OR PRINT NAME OF PERSON WHO SERVED THE PAPERS)

▶ JONATHAN BROWN

(SIGNATURE OF PERSON WHO SERVED THE PAPERS)

(See reverse for proof of service by mail)

PROOF OF SERVICE
(Family Law-Domestic Violence Prevention-Uniform Parentage)

7

PERSON SEEKING ORDER (name): MICHAEL ANTHONY MALLER    CASE NUMBER:

PERSON TO BE RESTRAINED (name): BON GIWE PROCTOR

5  The person to be restrained has (check at least one box)
   a ☒ assaulted or attempted to assault me or another member of my household
   b ☒ caused, threatened or attempted bodily injury to me or another member of my household.
   c ☐ made me or another member of my household afraid of physical or emotional harm.
   d ☐ sexually assaulted or attempted to sexually assault me or another member of my household.
   e ☐ stalked me.
   f. ☒ other (describe in item 19)  CAUSED MY FALSE IMPRISON BY WAY OF CONSPARACY.

6  a. The person to be restrained and I (you must check (1) or (2) below):
      (1) ☒ have no minor children together.
      (2) ☐ have minor children together.
            Child's name                              Birth date



      (3) ☐ A juvenile dependency petition has been filed. (If known, specify case numbers):
   b. If you are seeking an order regarding custody or visitation of your children, you must attach a Declaration Under
      Uniform Child Custody Jurisdiction Act (UCCJA) (form MC-150) and a Child Custody, Visitation, and Support
      Attachment to Application and Declaration for Order (Domestic Violence Prevention) (form DV-100A).

I REQUEST THE COURT TO MAKE THE ORDERS INDICATED BY THE CHECK MARKS IN THE BOXES BELOW.

7. ☐ RESTRAINING ORDER            ☒ To be ordered now and effective until the hearing.
      Restrained person must not contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any
      messages to, follow, stalk, destroy my personal property, disturb my peace, keep me under surveillance, or block my
      movements in public places or thoroughfares
      ☐ and that of the other protected persons listed in item 1

8. ☒ RESIDENCE EXCLUSION ORDER     ☒ To be ordered now and effective until the hearing.
      Restrained person must immediately move from and must not return to (address):  2613 CASETAS AVE.
                                                                                       ALTADENA, CALIFORNIA.
      and may take only personal clothing and effects needed until the hearing.
      I am entitled to live at the address above because (specify facts).  I AM THE SPOUSE AND
                                                                           COINHABITANT PAID RENT

9. ☒ STAY-AWAY ORDER                            100  ☒ To be ordered now and effective until the hearing.
      Restrained person must stay at least (specify):  100    yards away from the following persons and places
      (The addresses are optional and you do not have to provide them.)
      a ☒ Myself
      b. ☐ The other protected persons listed in item 1
      c. ☒ My residence (address optional):  2613 CASETAS AVE.
      d. ☐ My place of work (address optional):
      e. ☐ The children's school or place of child care (address optional).
      f  ☐ My vehicle (year, make, model, color, and license plate number are optional):
      g ☐ Other (specify):


10. If the restrained person is ordered to stay away from all the places requested in item 9, will the restrained person still be able to
    get to his or her residence, school, place of employment, or place of worship? ☒ Yes  ☐ No  (If no, explain).

**(THIS IS NOT AN ORDER)**
(Continued on page three)

MICHAEL ANTHONY MILLER **PETITIONER COPY**
2613 CASITAS AVE.
ALTADENA, CALIFORNIA 91001

FAX NO. (Optional)

PRO PER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
300 E. WALNUT STREET
PASADENA CALIFORNIA

MICHAEL ANTHONY MILLER

LONGINE PROCTOR

**FILED**
LOS ANGELES SUPERIOR COURT

JUN 2 6 2000

JOHN A. CLARKE, CLERK

BY SANDRA BROWN, DEPUTY

APPLICATION AND DECLARATION FOR ORDER
(Domestic Violence Prevention)

| CASE NUMBER |
| --- |
| GD027658 |

In making Orders Prohibiting Domestic violence before completing this form. This form must be completed and Cause and Temporary Restraining Order (CLETS) (form DV-110) AND PROTECTED

ANTHONY MILLER   Age 44

Relationship to person seeking order
Myself

PERSON (Name)

Height 105 Hair Color BLK Eye Color BROWN Race BLK Age 55 Date of Birth 10/19/55

involved in other court actions with the person to be restrained in which restraining orders were issued (If known, case numbers and county or other state, United States territory, military tribunal, tribal court, or the District of attach copies of orders) N/A

a restraining order, and the person to be restrained and I (check at least one box):

☐ ended on (date) AUG 6, 1998 and a dissolution, legal separation, or annulment proceeding
  ☐ has not been filed
  ☐ has been filed (If known, specify case number and county)
☐ are currently married to each other. (Specify state, county, and date of dissolution).
☐ are related by blood, marriage, or adoption (Specify relationship).
☐ live together
☐ formerly lived together
☐ have had a dating or engagement relationship.
☐ are parents of a minor child together.
☐ are parents of a minor child together and an action to establish paternity has been or is being filed (If known, specify case number and county).
☐ are parents of a minor child together and an action to establish or modify child support involving the district attorney has been or is being filed (If known, specify case number and county):
☐ are parents of a minor child together and have signed a Voluntary Declaration of Paternity form regarding the

*(THIS IS NOT AN ORDER)*
(Continued on reverse)

Form Adopted by the
Judicial Council of California
DV-100 [Rev. January 1, 2000]
Martin Dean's Essential Forms FM

Family Code § 6200 et seq

1     THE COURT: IT'S MARKED OR IT'S NOT MARKED?

2     DEFENDANT MILLER: OKAY.

3        WELL --

4     THE COURT: I GOT THE LETTERS. I DON'T HAVE THEM.

5        IS IT MARKED?

6     DEFENDANT MILLER: OKAY.

7     Q. WELL, I'M GOING TO ASK YOU ABOUT THIS LETTER THAT

8 WAS WRITTEN.

9        SAYS THAT YOU WERE OBSESSED WITH THE DEFENDANT AND

10 THAT YOU DIDN'T WANT HIM TO BE WITH ANY OTHER WOMAN.

11     A. THAT'S WHAT IT SAYS IN THERE?

12     Q. YEAH.

13        WOULD YOU LIKE TO SEE IT AGAIN? THIS IS THE

14 LAST -- FIRST PAGE AND THE LAST LINE OF THE LAST PAGE.

15     A. THE LAST LINE.

16     Q. THE FIRST LINE -- THE FIRST FEW LINES WHERE IT TALKS

17 ABOUT YOU'RE OBSESSED, AND THEN THE LAST PAGE WHERE IT SAYS THAT

18 YOU DIDN'T WANT THE DEFENDANT WITH NO OTHER WOMAN.

19     A. YEAH.

20     Q. SO THAT'S THE LETTER.

21        COULD THAT BE MARKED IN THE NEXT IN ORDER?

22     THE COURT: ALL RIGHT.

23        WE'LL MARK IT AS EXHIBIT 11.

24     DEFENDANT MILLER: I THINK I'VE FRUSTRATED MYSELF WITH

25 THIS WITNESS.

26

27        (WHEREUPON, DEFENDANT'S EXHIBIT NO. 11

28        WAS MARKED FOR IDE

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 06/26/00

-----------------------------------------------------------------------

CASE NO. GA039962

THE PEOPLE OF THE STATE OF CALIFORNIA
                          VS
DEFENDANT 01:  MICHAEL ANTHONY MILLER

-----------------------------------------------------------------------

INFORMATION FILED ON 10/13/99.


ON 06/23/00 AT  830 AM  IN NORTHEAST DEPT NEE

CASE CALLED FOR MOTION

PARTIES: TERI SCHWARTZ (JUDGE)  ROBIN BARNHART  (CLERK)
         KATHERINE INGERSOLL  (REP)      ROBERT L. COHEN  (DDA) -

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY HIMSELF IN PRO PER

COUNT (01) . DISPOSITION: DISMISSAL IN FURTH OF JUSTICE PER 1385 PC

MATTER IS BEFORE THE COURT FOR DEFENDANT'S MOTION TO VACATE THE
PLEA AND DISMISS THE CASE.
THE PEOPLE HAVE NO OBJECTION TO THE MOTION
THE COURT ORDERS THAT THE PLEA TO COUNT 1 IS VACATED AND THE
CASE IS DISMISSED PER 1385 PENAL CODE.

NEXT SCHEDULED EVENT.

PROCEEDINGS TERMINATED



EXHIBIT
#4
PAGE NO  1        MOTION
                  HEARING DATE  06/23/00

ORIGINAL FILED

MAY 3 0 2000

SUPERIOR COURT



1 Michael Anthony Miller.

2 435 E Altadena Drive

3 Altadena, California 91001

4

5

6

7

8                    IN THE STATE OF CALIORNIA

9                    SUPERIOR   COURT

10

11

12 THE PEOPLE OF THE STATE OF CALIFORNIA,          CASE NO. GAC39962

13                              Plaintiff,          MOTION TO VACATE

14                  -vs-

15 MICHAEL  ANTHONY  MILLER ,

16                              Defendant

17

18                    COMES NOW, Michael Anthony Miller, moves the

19 court and District Attorney, for an order to vacate the case of People v  Miller,

21 case no   GA039962 .

22                    This motion is predicated upon the following  grounds

23                    1  The evidence used in this case was the product of

24 perjury and subordinate of perjury by the witnesses, victim and  police in this  case,

25                    2  The conviction in this matter violates the constitution

26 prohibiting convictions secured  by way of denial of due process  and  equal protection

27 of  the laws

1                 3   The Defendant's offense terrorist threat is a product of a

2  conspiracy by the arresting officers , detective , witness ,and victim in this case.

3

4                WHEREFORE, Defendant prays that this Court and the

5  District Attorney join to vacate the case of People v Miller, case no. GA 039962

6  in the interest of justice

7

8  Dated  MAY 24, 2000               Respectfully Submitted,

9                                   MICHAEL ANTHONY MILLER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

2

| ☑ | SUPERIOR COURT OF CALIFORNIA, COUNTY OF: LOS ANGELES |
|---|---|
| | MUNICIPAL BRANCH OR JUDICIAL DISTRICT: NORTHEAST |

**FILED**
LOS ANGELES SUPERIOR COURT
JUL 27 2001
JOHN A. CLARKE, CLERK
BY M. LEES, DEPUTY

| PEOPLE OF THE STATE OF CALIFORNIA VS. DOB: 05-31-56 | GA043414-01 | -B |
|---|---|---|
| DEFENDANT: MILLER, MICHAEL ANTHONY | | |
| AKA: | | -C |
| CII#: 003921379 | | |
| BOOKING#: 6537100 | ☐ NOT PRESENT | -D |

| ☐ COMMITMENT TO STATE PRISON | ☐ AMENDED |
|---|---|
| ABSTRACT OF JUDGMENT | ABSTRACT |

| DATE OF HEARING | DEPT. NO. | JUDGE |
|---|---|---|
| 072501 | NE R | J MICHAEL BYRNE |

| CLERK | REPORTER | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|
| J.L. SNYDER | WANDA LAW | |

| COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | ☐ APPTD. |
|---|---|---|
| NATALIE AGAJANIAN | JAMES BISNOW, BPA | |

1. Defendant was convicted of the commission of the following felonies:

☐ Additional counts are listed on attachment ____ (number of pages attached)

| CNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO/DATE/YEAR) | JURY | COURT | PLEA | CONCURRENT | CONSECUTIVE | 654 STAY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | PC | 273.5(A) | INFLICT CORP INJURY/SPOUSE | 2000 | 122200 | X | | | | | |
| 02 | PC | 245(a)(1) | ASSLT LIKELY TO PRODUCE G.B.I. | 2000 | 122200 | X | | | | X | X |
| 03 | PC | 236 | FALSE IMPRISONMENT/VIOLENCE | 2000 | 122200 | X | | | | X | X |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST enhancements stricken under PC 1385.

| CNT | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST enhancements stricken under PC 1385

| ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

Defendant was sentenced to State Prison for an INDETERMINATE TERM.

4. ☐ For LIFE WITHOUT THE POSSIBILITY OF PAROLE on counts _____

5. ☐ For LIFE WITH POSSIBILITY OF PAROLE on counts _____

6. ☒ For 25 years to life, WITH POSSIBILITY OF PAROLE, on counts 01
   PLUS enhancement time shown above.

7. ☐ Additional determinate term (see CR-290).

8. Defendant was sentenced pursuant to ☒ PC 667(b)-(i) or PC 1170.12   ☐ PC 667.61   ☐ PC 667.7   ☐ PC 667.9
   ☐ other (specify):

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for indeterminate sentences. Attachments may be used but must be referred to in this document.

(Continued on reverse)

Form Adopted by the Judicial Council of California Effective Jan. 1, 1999)

Penal Code, §§ 1213, 1213.5

EXHIBIT # 5

A 13

PEOPLE OF THE STATE OF CALIFORNIA V:
DEFENDANT: GA043414-01

**000762**

| GA043414-01 | -A | -B | -C | -D |
|---|---|---|---|---|

9. FINANCIAL OBLIGATIONS (including any applicable penalty assessments):
   a. ☐ RESTITUTION FINE of: $ 1000.00 per PC 1202.4(b) forthwith per PC 2085.5.
   b. ☐ RESTITUTION FINE of: $ 1000.00 per PC 1202.45 suspended unless parole is revoked.
   c. ☐ RESTITUTION of: $ _____ per PC 1202.4(f) to ☐ victim(s)* ☐ Restitution Fund
      (* list victim name(s) if known and amount breakdown in item 11, below.)
      (1) ☐ Amount to be determined.
      (2) ☐ Interest rate of: _____% (not to exceed 10% per PC 1204.4(f)(3)(F)).
   d. ☐ LAB FEE of: $ _____ for counts: _____ per H&SC 11372.5(a).
   e. ☐ DRUG PROGRAM FEE of: $150 per H&SC 11372.7(a).
   f. ☐ FINE of: $ _____ per PC 1202.5.

10. TESTING:
    a. ☐ AIDS pursuant to  ☐ PC 1202.1  ☐ other (specify):
    b. ☐ DNA pursuant to  ☐ PC 290.2  ☐ other (specify):

11. Other orders (specify):
    **THE COURT ORDERS DEPT OF CORRECTIONS TO DETERMINE THE TOTAL OF GOOD TIME/WORK TIME CREDITS.**

12. Execution of sentence imposed
    a. ☐ at initial sentencing hearing.
    b. ☐ at resentencing per decision on appeal.
    c. ☐ after revocation of probation.
    d. ☐ at resentencing per recall of commitment. (PC 1170(d).)
    e. ☐ other (specify):

13. CREDIT FOR TIME SERVED

| CASE NUMBER | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|---|---|---|---|---|
| GA043414-01 -A | ** | 371 | | 4019 / 2933.1 |
| -B | | | | 4019 / 2933.1 |
| -C | | | | 4019 / 2933.1 |
| -D | | | | 4019 / 2933.1 |

14. DATE SENTENCE PRONOUNCED:
07-27-01

SERVED TIME IN STATE INSTITUTION: ☐ DMH  ☐ CDC  ☐ CRC

15. ☐ The defendant is remanded to the custody of the sheriff ☒ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
   To be delivered to ☒ the reception center designated by the director of the California Department of Corrections. ☐ other (specify):

## CLERK OF THE COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE |
|---|---|
| | 07-27-01 |

CR-292 [Rev. January 1, 1999] **ABSTRACT OF JUDGMENT - PRISON COMMITMENT - INDETERMINATE** Pa

REPORT
(91)
SUPPLEMENTAL TO
DISCHARGE REVIEW
DISCHARGE REVIEW
NAEA REPORT - SU...
CSTCU
REPORT
ACTIVITY REPORT

| NAME (LAST, FIRST, MI) | | ASSIGNMENT |
|---|---|---|
| SOL MILLER, MICHAEL | | III PAZ 2 |

| HOLD/PAROLE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|
| 12-21-00 | — | ☐ |

OFFENSE: VOLUNTARY MANS.

IS COMMITMENT OFFENSE SUBJECT TO 663 P.C.
(WHETHER OR NOT COMMITMENT WAS ENHANCED)
☐ NO   ☐ YES - IF YES, *DO NOT SPECIFY DISCHARGE EFFECTIVE DATE BELOW

**IF ARRESTED, COMPLETE THE FOLLOWING ARREST DATA**

| ARRESTING AGENCY | BOOKING NUMBER AND/OR LOCATION | NAME BOOKED AS |
|---|---|---|
| CO LASO | 6537100 - LACT | SAME |

| HOLD REMOVED DATE | | |
|---|---|---|
| TO WTACT | | |

... OF REVOCATION HEARING:  10-23-00

...COMPLETED, DATE PAROLEE SIGNED OPTIONAL WAIVER: _____

...TION OF HEARING:  LACT

FINDINGS (OUTCOME OF HEARING):  BWC HLD 10-24-00  CHARGE 1 DISMISSED

COMMISSIONER: _____
ENTS: COUNSEL ALLEN

...'S RECOMMENDATION:
...RSC HOLD, 10-23-00  I.D. WARRANTS

| PAROLE AGENT'S SIGNATURE | DATE |
|---|---|
| JL | 10-23-00 |

...'S ACTION:
☑ REVIEW   ☐ RETAIN HOLD   RELEASE HOLD AS OF (DATE): ☑ 10-23-00   ☐ CANCEL WARRANTS — WANTS

...UE ON PAROLE   ☐ CONTINUE IN OUT PATIENT STATUS   DISCHARGE EFFECTIVE (DATE):   ☐ RETAIN ON PAROLE

...TE ON PAROLE AS   ☐ TIME LOSS   ☐ SUSPEND/REDISTATE IN OPS AS OF (DATE)   ☐ REFER TO BPT/NAEA   ☐ INVESTIGATE, SUBMIT APPROPRIATE REPORT BY (DATE)
   ☐ NO TIME LOSS

...CONDITION(S):   ☐ ADD   ☐ DELETE

...'S COMMENTS/RECOMMENDATION
- TO continue to monitor court proceedings while in custody

| UNIT SUPERVISOR'S SIGNATURE | DATE |
|---|---|
|  | 10-23-00 |

...TO PAROLE ADMINISTRATOR

...ATOR'S COMMENTS/DECISION
Concur as M/S while in custody

| DISCHARGE EFFECTIVE DATE | FIELD ADMINISTRATOR'S SIGNATURE | DATE |
|---|---|---|
| TO BPT/NAEA ☐ | | |

...EE COPY PROVIDED:   ☐ MAILED   ☐ DELIVERED BY:

DD  12-21-00

EXHIBIT #6

# REVOCATION HEARING OF MR. MICHAEL MILLER.

North LA county Jail
10/23/2000
Revocation Hearing

O: Iniguez, Deputy Commissioner with Parole Board, hearing officer
Donald Barbee, District Attorney
Agent Lin, Probation Officer
Mr. Allen, Attorney for Miller
Mr. Armen, Deputy

## Testimony of Dep. Ramirez and Officers

O: Hi

R: how are you doing?

O: will you raise your right hand so that I can swear you in. Do you solemnly swear that the testimony you're about to give is the truth, the whole truth, and nothing but the truth, so help you God?

R: yes

O: thank you. For the record, could you give me your full name and spell your last name?

R: Edward Ramirez. R-A-M-I R-E-Z.

O: and you're employed by who?

R: Los Angeles County Sheriff's Dept., Deputy Sheriff.

O: thank you very much. Alright, now I guess you're involved in the arrest of Mr. Miller, is that correct?

R: that is correct sir.

O: tell me what happened?

R: If I can, can I refer to a couple of the reports

O: uh-huh

R: Ok, it was actually two incidents. The first incident we responded to a call of a woman who called us saying she had been assaulted by her spouse. We contacted the woman who was standing at a pay phone, she was wearing a towel. We asked her what happened, she told us what happened. She said she had been ?in a brawl? her and her husband had been sitting in a car, they were talking. They had a verbal argument. She went to go sit outside on a swing of some sort. They began to argue. (Long pause) She sat on a lawn chair. After about a minute he walked over to her, pulled a blanket off her shoulder and picked her up and carried her into the house. Once inside he put her down and told her to go to bed. She refused, and he walked outside to the car to get something. When he returned, he found that she that had barricaded herself inside the bedroom. He pushed open the door in the bedroom and grabbed the victim by both her wrists and dragged her out the front door out to the driveway. Once in the drive way, he pulled her shirt and lifted her about two feet off the ground. At this point she doesn't remember what happened. She got, all she remembers is being in the living room and a suspect, suspect Miller at the time tore her shirt off of her, pulled her pants off and said now you can leave. He pushed her out the front door and once outside she ran down southbound on Presita where she says she hid in a backyard



approximately one hour. She saw the suspect pass by approximately five times and she did tell us she was quite scared at the time. After the hour had passed she walked over to the pay phone on Lincoln avenue and by Presita where we contacted her. We took her back to the residence and requested an ambulance who transported her to Chospital

O: Did you see any visual injuries on her that you recall?

R: at the time there was nothing visible, that I saw

O: did she indicate that she was either punched, slapped, kicked? Anything like that? from earlier.

R: she said she was sore but she doesn't remember what happened when she was sore all over her body.

O: she doesn't remember what happened?

R: no she didn't. She couldn't say exactly what happened. But she did say she lost... she doesn't remember what happened once she came.. She doesn't know how she got from the driveway to the inside.

O: did she appear intoxicated? On drugs, anything like that? that you recall

R: no, nothing

O: have you had any prior contact with her in the past before

R: I personally have not.

O: any more questions?

O2: sir, were there any witnesses to when this occurred?

R: I don't believe there were any witness other than myself and my partner Deputy ?Menier? We were working a two man unit at the time.

O2: Did you ever asked Mr. Miller what was going on?

R: I never saw Mr. Miller until I encountered him the day he was arrested.

O2: When you went in the house, did you notice anything in disarray?

R: we couldn't get into the house because the doors where locked and Mr. Miller took the keys.

O2: were you aware of any restraining order that Mr. Miller had against him?

R: we went back to the station and apparently they had been both, they had both taken out restraining orders. So there was a restraining order against her not being on the property and there was a restraining order against him not being on the property. It was actually confusing.

O2: thank you, I have nothing further.

O: Any others? Well thank you ???

O2: can I ask you one more question? Do you know of any reports that were taken on the 17, 9, 19, and the 15?

R: no, its the first time I talked to the victim before, that night. I had never seen him before, had any contact.

O2: you had no idea of a prior reports

R: personal knowledge, no sir, I didn't.

O2: thank you

O: thank you, you are excused.

## Testimony of Dep. Ronnie Lee Menier and Officers

O: will you raise your right hand so that I can swear you in. Do you solemnly swear that the testimony you're about to give is the truth, the whole truth, and nothing but the truth, so help you God?

M: I do.



O: for the record, could you give us your full name and spell the last name.

M: Ronnie Lee Menier. M-E-N-I-E-R.

O: and you're employed by who?

M: LA Sheriff's Dept., Highway Patrol ??

O: alright. You were also involved in the arrest of Mr. Miller. Is that correct?

M: yes sir.

O: do you remember what happened?

M: as far as the arrest?

O: and the incident, that led to the arrest.

M: All I did while I was there, I took a report the next couple weeks before that and Mr. Miller' s wife thought, said that he had beaten her up. And I did the first report, and there was a warning. I guess shortly thereafter, we made the arrest on Mr. Miller at his sister's address in Altidena.

O: ok, the first time that she indicated to you that Mr. Miller had beaten her up, what could you recall about that?

M: As far as the incident itself. Ok, we received a call about 2:30, 3 a.m.. We find her on a street corner, Figueroa/Lincoln in front of a liquor store pay phone wrapped up in a towel. Barefooted, wrapped in a towel. I grabbed the blanket out of the radio car, wrapped her in a blanket, called the fire dept. over. They checked her out and transported her over to?? Hospital which at that time she made allegations that Mr. Miller had been, I guess, abusing her. She stated that it was a normal thing where it happened in the past. She said it was unreported in the past

O: do you recall whether that night she had any evidence of being beaten up? Cuts, bruises,

M: there weren't many, or should I say much of, visible injuries as far as bruising or you know that ...(on the initial call, no.) Yes there's complain of pain, no nosebleeds.

O: and then the second incident involved the arrest

M: the arrest, right.

O: why don't you tell me about that?

M: that particular evening, his wife had come to the station and she had told us well in the past that she had no way of doing anything, that Mr. Miller had taken away her car, had taken her purse, with all of her identification, her keys. She had no way of getting anything, you know. So, on that particular night, she was there because she had no where else to go. So, Deputy Warner, who was working the desk, was dialing, was calling, in fact, he and I were calling all the numbers to see if we could find a home or shelter, somewhere for her to go in the evening. Then I left. I got a call and headed, leaving the station. So, as I got back to the station, Deputy Winters tells, runs out the back door as I am getting out of my patrol call and he said, the suspect, just ran out the front door of the station, going southbound in her car. So as I look, I see the red Honda shooting southbound on Lincoln. And Mr. Miller's residence was probably 4 or 5 miles from the station. But I happen to know that his sister lives less than a half mile away. So, I drove, I told my partner, there is no way that he's going to try to get all the way home, so we went across, trying to cut him off, thinking that he was going to his sister's residence. As we were traveling south, well west bound on Altadena drive we turned south on, I believe, Santa Rosa and he was coming northbound. And we made a U-turn, jumped in behind him and followed him to his sister's, where he pulled up in the drive way. And we detained him there.

O: any questions?

O: ......... anyone went in the house?

M: ...

O: ...... were no other witnesses?

M: as far as?

O2: what went on between the two of them?

M: no

O2: And did you ask Mr. Miller what was going on with his wife?

M: did I ever ask?

O2: yes

M: no, that wasn't my job, that was the detective's job.

O2: thank you

O: anyone has any more questions? Ok. Thank you very much, you are excused.

O: Alright, information

O2: As to the charge based on the fact that the officers both testified that they saw no visible injuries on Mrs. Procter. That Mr. Miller and Mrs. Procter apparently are fighting over a court, a house, and um, Mrs. Proctor apparently has made trial accusations against Mr. Miller which require Mr. Miller to go to court and get a, I think its??, the acting prior case against him expunged. Mr. Miller has been reporting his problem with his wife to his parole. So it's not something that he is making up just here and apparently he does have a restraining order against her. Based on the credibility of the witness against him, I only value that these (suspicion is nothing ponderous). Mr. Miller has a transcript here of the preliminary hearing, establishing that she has made contradictory allegations against him.

(Speaking in low voices in the background)



## III. REASON FOR DECISION

for Conclusion:

for Disposition:

*(handwritten) Charge Dismissed*

Michael Anthony Miller
C.D.C./T27370
P.O.Box 8501
Coalinga,California 93210

August 3,2005

BOARD OF PRISON TERMS

SEP 2 6 2005

Subject: GOVERNMENT AGENCIES ARE BEING USED BY CORRUPT OFFICIALS
TO EFFECTUATE ILLEGAL INCARCERATION OF INNOCENT CITIZENS
BY SHUTING DOWN THE GOVERNMENT OFFICE THEY OCCUPY BY WAY
OF CODE OF SILENCE AND NOT RESPONDING TO REFERRALS FOR
PROBES REQUESTED BY OTHER RESPONSIBLE OFFICIALS

Dear reader:

It is the intent of this letter to inform you and your staff about
the corrupt methods of not responding to referrals for probes into
the criminal acts of kidnap by way of judicial and executive fraud
perpetrated by County and State officials who take holding the titles
of elected or appointed officials give them the right to cause the
continued illegal incarceration of citizens whom they feel should
be incarcerated.

This letter is my attempt to cause you and your agents to cause the
branches of this government to function absent the code of silence
many corrupt officials have adopted to protect themselves and other
corrupt officials who have used their job titles as vehicles to
commit crimes and aid criminal officials with facilitation of the
false imprisonment of innocent citizens.

You have been either requested by me or an official to probe the
case of my illegal incarceration based on falsities in reports and
transcript records proving perjury and conspiracy that has been
allowed to go on for five years now and the referrals to your office
or other officials offices that have ignored the criminal activities
of corrupt officials who think it is now their right to comit crimes
because they hold the public offices or titles.

I hope you and your agents either refer this matter to appropriate
authorities to prevent this continued illegal incarceration made
possible by the corrupt officials who have breached their duties
and used their positions to create what is by law termed a criminal
enterprise.

Thank you in advance.

Sincerely,
MICHAEL ANTHONY MILLER

**BOARD OF PAROLE HEARINGS**
1515 K STREET, ROOM 600
SACRAMENTO, CA 95814

September 30, 2005

Michael Miller
T27370
PVP



Dear Mr. Miller:

This is in response to your letter received on September 26, 2005 by the Quality Control Unit, regarding your request for BPH to release you to parole. Our records indicate that you are a felon inmate, not serving on a parole violation. Therefore, you are not under BPH jurisdiction. In addition, BPH does not have the authority to overturn the courts sentence.

Effective May 1, 2004, the Board of Prison Terms Appeals section (15 CCR sections 2050-2056) was repealed by Administrative Directive No. 04/01. **The Board of Prison Terms (now the Board of Parole Hearings) no longer has an Appeals Unit;** therefore, the decisions or actions regarding the issues listed below **cannot be appealed** and will no longer be addressed by the Board, regardless of whether the issues are written on a BPT 1040, a CDC 602, or in letter format:

- due process (including hearing scheduling)
- parole revocation process (including hearing panel issues)
- early discharge requests (prior to discharge review)
- good cause findings for hearings
- CDC clerical errors regarding date/time/credit calculations/day for day
- CDC/P&CSD staff related issues
- submitted prior to a Board action
- attorney issues
- witness issues
- time assessed at the revocation hearings

You may go directly to the courts per California Department of Corrections, 15 CCR section 3160, Inmate Access to the Courts. Forms are available at the institution's law library. If you are being housed at a county jail, you can obtain a copy of the forms at your jail housing unit.

Issues concerning clerical errors on BPT 1103 and 1104 forms related to Board decisions, mandatory discharge, credit eligibility during revocation terms, BPT mandated special conditions of parole, retain on parole actions, and other rules of law, can be reviewed by the Board. You can submit these concerns via correspondence to the Board of Parole Hearings, Quality Control Unit, 1515 "K" Street, Sixth Floor, Sacramento, California, 95814.

Sincerely,

Lindsey Tyree
Quality Control Unit

## LIFE PRISONER: DOCUMENTATION HEARING (BPT §2269.1)

BPT REPRESENTATIVE

### SENTENCE INFORMATION

| OFFENSE (CODE SECTION AND TITLE) | | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|
| CORP INJ SPOUSE | P273.5 | GA043414 | 1 |

| DATE RECEIVED CDC | MIN ELIG PAROLE DATE | EARLIEST MIN ELIG PAROLE DATE |
|---|---|---|
| 08/14/2001 | 01/17/2025 | |

| INITIAL HRG SCHEDULED | PERIOD COVERED BY THIS HEARING | PRIOR DOCUMENTATION HEARING DATES |
|---|---|---|
| 12/2023 | 08/14/2001 - 06/16/2005 | NONE |

### INFORMATION CONSIDERED

| CDC 115 CHRONOS | LAUDATORY CHRONOS | |
|---|---|---|
| | DATE | CIRCUMSTANCES |

☐ DISCIPLINARY FREE            *none*

☒ MAJOR DISCIPLINARY (SERIOUS)
*weapon w/ stay 7-26-04*

☐ MINOR DISCIPLINARY (ADMIN)

| CDC 128 CHRONOS (NEGATIVE) | | CHRONOS - WORK, EDUCATIONAL, VOCATIONAL, ETC. | |
|---|---|---|---|
| DATE | CIRCUMSTANCES | DATE | CIRCUMSTANCES |
| 5-6-03 | *grooming* | | *ordinary* |
| 1-8-03 | *failure of records* | | |
| 1-4-02 | *290 PC refusal* | | |

### INSTRUCTIONS TO CDC STAFF

DOCUMENTS STILL REQUIRED *Sentencing Transcripts / Appellate decision*

PSYCHIATRIC

REFER TO CATEGORY _____

COMPLETE PRIOR TO _____

PLACE ON APPROPRIATE

☐   LIFE PRISONER DOCUMENTATION CALENDAR
☒   LIFE PRISONER PAROLE CONSIDERATION HEARING CALENDAR   *12/2028*

OTHER

_____

_____

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| MILLER, MICHAEL, ANTHONY | T27370 | PVSP | AUGUST 2005 | AUGUST 15, 2005 |

INMATE COPY

AFTER REVIEWING WITH THE PRISONER THE FACTORS WHICH MIGHT BE OF CONCERN AT HIS/HER INITIAL PAROLE HEARING, THE PANEL MADE THE FOLLOWING EVALUATIONS AND FUTURE RECOMMENDATIONS

RE: VOCATIONAL TRAINING _none — S to upgrade & complete a voc program_

RE: ACADEMICS _(GED) — confirmed in file_

RE: WORK RECORD _(in 3/05 Porter 0°; satisfactory_
_(in College Program (03) - 1 course_

RE: GROUP ACTIVITIES _none — S to participate in self_
_help — especially Anger Management_

RE: PSYCHIATRIC TREATMENT _GP but MHSDS referral made when he_
_rec'd 115 for Overfam. w/ female staff. S_
_has MH history & abuse toward females. CCCM S-01_

RE: PRISON BEHAVIOR _1 - CDC 115 - S to become & remain_
_disciplinary free_

RE: OTHER _3RD striker - SNY - S was prev Ash committment_        _(2962 PC) (97-98)_
_(when he met his wife who was a nurse) - Victim in to-_
_Prior MH history — S feels he is here_
_"illegally" & is appealing his case._

| BPT REPRESENTATIVE SIGNATURE | DATE |
|---|---|
| _(signature) D.H. McBean_ | 8-15-05 |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| MILLER, MICHAEL, ANTHONY | T27370 | PVSP | AUGUST 2005 | AUGUST 15, 2005 |

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

PEOPLE OF THE STATE OF CALIFORNIA, )
                                           )
            Plaintiff,          )
                                           )
            vs.               )
                                           )
MICHAEL ANTHONY MILLER,       )   **Declaration of**
                                           )   **Thomas J. Remy**
           Defendant.      )
                                           )

I, THOMAS J. REMY, declare as follows:

I am the acting records officer of the Board of Parole Hearings. In this capacity I am the duly authorized custodian of records of the Board of Parole Hearings. I have the authority to certify Board records.

On April 23, 2009, the Board received a subpoena duces tecum issued out of the Los Angeles County Superior Court, in the case of *People of the State of California vs. Michael Anthony Miller,* requesting a legible copy of Board of Prison Terms (BPT) form 1103, *Summary of Revocation Hearing and Decision*, from the October 23, 2000 revocation hearing for Michael Anthony Miller, California Department of Corrections and Rehabilitation number C-57302/T-27370.

A thorough search of our files was conducted and BPT form 1103 from the October 23, 2000 revocation hearing for Mr. Miller was not located. In 2000, the policy of the Board was to maintain on file the BPT 1103 revocation hearing forms for six months and the audio tapes of the revocation hearings for one year. Following these time periods, the materials were purged from our files.

The BPT form 1103 from the October 23, 2000 revocation hearing may be obtained from Mr. Miller's central file(s) maintained by the Department of Corrections and Rehabilitation, or possibly from the Department of Corrections and Rehabilitation Archives Unit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of April 2009 at Sacramento, California.

THOMAS J. REMY

# Valley fever fungus lands on bioterror list

By Seth Nidever
snidever@HanfordSentinel.com

A recent state study shows that prisoners sent to the San Joaquin Valley are much more likely to get valley fever than the rest of the local population. But none of the inmates has been jailed for possession of the fungus that causes the disease. Since the Bioterrorism Act of 2002, that's something that could land a person behind bars or worse. The soil fungus that causes valley fever was added to an expanded list of biological agents and toxins heavily regulated by the federal government as potential terrorism agents in the wake of the Sept. 11, 2001 attacks. Included with a host of scary sounding names like "Crimean-Congo haemorraghic fever virus" and "hantavirus pulmonary syndrome" is the fungus known scientifically as "coccidioides immitis."

That's the technical name for the microscopic mold spores that lurk in local soil and are inhaled as they become airborne. The result is an infection that can cause aching joints, pneumonia, hospitalization and - in some cases - death. There is no cure. The federal government considers the organism, which resembles mold on a piece of bread, to be a biological weapon that terrorists might consider alongside more well-known agents of mayhem like anthrax and botulism. Experts don't think it has much of a future as a deliberate killer. "From a practical point of view, I don't think (the fungus) would be a very useful agent," said Dr. Hans Einstein, a valley fever specialist in Bakersfield. Getting the virus would be easy, Einstein indicated - as easy as paying a technician $100 to get a lab sample, he said  Getting it airborne might not be a problem either. Einstein said a would-be terrorist would need a gun, plane, helicopter or other dispersion device. The resultant cloud of spores could sicken a lot of people, especially if it spread among those who had never been exposed, Einstein said. The fungus would have the greatest impact among those with no built-up immunity. Many natives and longtime residents of the San Joaquin Valley, having had the disease without being aware of it, are less susceptible to reinfection  So a terrorist would probably have more success releasing the spores in Washington, D.C. or New York rather than Hanford, according to Einstein. The trouble would be getting the airborne organism to move in the desired direction.

# valleyfever*survivor*.com



VFS Store | e-Newsletter | Message Board | Contact Us

VF Questionnaire | Arizona 2006 Poll | California Poll | Opinion Poll | VF Animal Survey | General Survey | Military/Stud

Home
FAQ
VF Facts
Misconceptions
Symptoms
Maps and History
Action Letters
Founder's Story
Dawn to Dusk
VFS Stores
Links & Contributions
Glossary
Archived Updates

## *Updates*

### June 2007 In the news:

With Tuberculosis (TB) making national headlines lately, we thought it would be worthwhile to show a comparison between TB and Valley Fever (VF). Note that the following information refers even to both the serious TB strain that has been in recent news as well as common TB strains.

| Fact about the disease | TB | VF |
|---|---|---|
| It can mimic the symptoms of other diseases | Yes | Yes |
| Causes cough, fatigue, night sweats, fever and/or a variety of other symptoms | Yes | Yes |
| Can make people cough up blood | Yes | Yes |
| Potentially lethal | Yes | Yes |
| Can disseminate from the lungs to attack virtually any other organ | Yes | Yes |
| Could cause chronic symptoms | Yes | Yes |
| Can become dormant and then reactivate at any time, perhaps decades later, to sicken or kill its host | Yes | Yes |
| Can be resistant to drug treatment | Yes | Yes |
| Travelers can easily find information about how to avoid this disease | Yes | No |
| Commonly spread from person to person | Yes | No |
| Could be inhaled and contracted 365 days a year because it is a part of the air in the desert Southwest, especially Arizona and the San Joaquin Valley of California. | No | Yes |
| The Centers for Disease Control makes national and international pronouncements about its health | Yes | No |

e-Newsletter *sign up*
Sharon's Desk
Support Groups
Veterans' Info
VF Legal Action
Message Board
Media Room
Contact Us

**WARNING:** Read about the dangers of flowers of sulfur, a rumored "Valley Fever Cure."

**Important:** Please click on the link below to send free cards to say thanks to our armed forces serving overseas.
http://www.letssaythanks.com/

This page is viewed best at a resolution of 800x600 or higher on Internet Explorer 6, Firefox 1, or more recent browsers.

| | | | |
|---|---|---|---|
| risks | | | |
| Repeatedly mentioned in national news stories as an important health topic | Yes | No | |
| Regulated as a Select Agent for its potential use as a biological weapon in two federal antiterrorism laws | No | Yes | |
| Germany invoked the Geneva Convention during WWII because it would be unacceptable for America to keep captured Nazis in Florence, AZ, specifically because the prisoners could catch this disease. America agreed to move the prisoners. | No | Yes | |

Since we had a chart with the increase of Valley Fever in Arizona in the May update, we decided to include a chart of California, featuring the five counties that reported the highest number of VF infections over the past four years.

| County | 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|---|
| Kern | 1,072 | 1,283 | 1,524 | 1,666 | 1,084 |
| Fresno | 83 | 135 | 143 | 291 | 744 |
| Los Angeles | 83 | 97 | 166 | 200 | 221 |
| Tulare | 96 | 143 | 161 | 132 | 192 |
| Kings | 50 | 42 | 83 | 52 | 192 |
| CA State Total | 1,797 | 2,091 | 2,641 | 2,885 | 3,122 |

Since the number of reported cases are estimated to be only 2% of the infections that occur overall, the total for 2006 would be estimated at over **156,000** cocci infections. Notice that the state's total had nearly doubled, that Kings County's annual caseload increased by nearly **300%**, and that Fresno's annual caseload increased by nearly **800%** over the past four years!

**May 18 Update:** We thank KPNX 12 News in Arizona and KONG 6/16 and KING 5 News in Seattle, Washington for featuring us in their news reports about Valley Fever on May 17th, as well as Fox 11 in Arizona for airing the Health Link story on

# BEHIND ENEMY LINES

# Valley Fever at Pleasant Valley State Prison

## by Wakeel Swanson

Dear brothas and sistas, I write to you today to enlighten you and hopefully raise your awareness about an issue that every African American living in California needs to be made aware of. The issue at hand is a fungus that if breathed causes a condition known as Coccidiodomycosis, also known as Valley Fever.

Valley Fever attacks the body through the respiratory system. When breathed, the fungus enters the lungs where it acts like a cancer and grows in tumor-like lesions along the wall of your lungs. After time these lesions burst and spread at the point you develop what is known as cocci-pneumonia, where the lungs fill with fluid and inflammation sets in, making it very hard to breathe.

But this is not the end of it. If by this time you still have not received medical treatment, the fungus now has spread to the bloodstream and has changed into its disseminated form. In this stage, Valley Fever is at its deadliest.

It now attacks your joints, creating cysts and eventually causing the bones in your extremities to deteriorate, leaving you an invalid. And if you have the misfortune of this fungus reaching your spine, it attacks the fluid in your spine and you are likely to develop spinal meningitis as well as fluid on the brain. Your survival probability has now just gone from slim to non-existing.

Now that you have an idea of what Valley Fever is, allow me to inform you of the situation here at Pleasant Valley State slave camp. Out of approximately 600 cases in the California central valley, over 500 cases of Valley Fever come directly from Pleasant Valley State Prison.

The California Department of Corrections and "Rehabilitation" is fully aware of this problem yet refuses to do anything about it. The reason they refuse is due to the fact that our governor wants to build out here as part of his prison-expansion-to-ease-overcrowding-plan, and to acknowledge this Valley Fever epidemic would mean that our governor is purposely placing African-Americans in harm's way



"It got so bad I almost died."
—Mark King

Mark King, 50, uses his wheelchair to get around the Pleasant Valley State Prison gymnasium where he sleeps. Valley Fever, which he contracted at the prison, led to a four-month hospital stay, where he lost 30 pounds

PHOTO: BRIAN BAER, SACRAMENTO BEE

When we were convicted in these courts, the judges sentenced us to serve an amount of time in confinement for our crimes – not to die for our crimes. If you have a chronic lung disease such as asthma and/or any other illness that lowers your immune system and CDCR houses you in this environment, your life has been placed in immediate danger!

I am alerting African-Americans to this problem on behalf of all my brothers and sisters trapped behind these enemy lines. If you have a family member locked down here in the Central Valley and you are blessed with the ability to come visit them, you need to be made aware of this risk to your health, because CDCR is not going to look out for your wellbeing, or no one else's except maybe the officers' union.

P.S. I need you to know the reason I bring this information to the African-American community is because after some research I have found that African-Americans are among the high risk groups for contracting the most severe forms of Valley Fever. Do the research; get informed!

> Out of approximately 600 cases in the California Central Valley, over 500 cases of Valley Fever come directly from Pleasant Valley State Prison.
>
> WAKEEL SWANSON

*Send Wakeel some encouraging words Wakeel Swanson, P-41463, B3-139 up, PVSP, P.O. Box 8502, Coalinga, CA 93210*

 **MayoClinic.com**
**Tools for healthier lives**



**Original Article:**http://www.mayoclinic.com/health/valley-fever/DS00695

# Valley fever

## Introduction

In the boomtowns of Southern California and the American Southwest, where houses go up faster than the land can be cleared, the air is filled with dust churned up by bulldozers and held aloft by the hot wind. But dust isn't the only problem in these overheated regions. Another is the lung disease, valley fever, known medically as coccidioidomycosis, or cocci.

The soil-borne fungus that causes valley fever is stirred into the air by farming, construction and wind, and then breathed into the lungs. Valley fever can cause fever, chest pain and coughing, among other symptoms. Most people who inhale the valley fever fungus have few, if any, problems. But some, especially pregnant women, people with weakened immune systems, and those of Asian, Hispanic and African descent, may develop a serious or even fatal illness from valley fever.

Mild cases of valley fever usually go away on their own. When valley fever is more serious, doctors prescribe antifungal medications that can treat the underlying infection.

## Signs and symptoms

Valley fever occurs in three forms: acute, chronic and disseminated.

### Acute valley fever
The acute form is often mild, with few, if any, symptoms. When symptoms do occur, they tend to resemble those of the flu, and can range from minor to severe:

- Fever.
- Cough.
- Chest pain, which can vary from a mild feeling of constriction to intense pressure resembling a heart attack.
- Chills.
- Night sweats.
- Headache.



- Fatigue.
- Shortness of breath.
- Joint aches.
- Rash. Some people develop painful red bumps that may later turn brown — mainly on the lower legs but sometimes on the chest, arms and back. Others may have a raised red rash with blisters or eruptions that look like pimples.

If you don't become ill from valley fever, you may only learn that you've been infected when you later have a positive skin or blood test or when small areas of residual infection (nodules) show up on a routine chest X-ray. Although they don't cause problems in and of themselves, nodules can look like cancer on X-ray, leading to unnecessary biopsies.

If you do develop symptoms, especially severe ones, the course of the disease is uncertain. It can take from six months to a year to fully recover, and fatigue and joint aches can last even longer. The severity of the disease depends on several factors, including your overall health and the number of fungus spores you inhale.

**Chronic valley fever**
Appearing as many as 20 years after the initial infection, chronic valley fever is most common in people with diabetes or a weakened immune system. You're likely to have periods of worsening symptoms alternating with periods of recovery. Signs and symptoms are similar to those of tuberculosis:

- Low-grade fever
- Weight loss
- Cough
- Chest pain
- Blood-tinged sputum
- Nodules in the lungs

**Disseminated valley fever**
The most serious form of the disease, disseminated valley fever occurs when the infection spreads beyond the lungs to other parts of the body, most often the skin, bones, liver, brain, heart and the membranes that protect the brain and spinal cord (meninges).

The signs and symptoms of disseminated disease depend on which parts of your body are affected and may include:

- Nodules, ulcers and skin lesions that are more serious than the rash that sometimes occurs with other forms of the disease
- Painful lesions in the skull, spine or other bones
- Painful, swollen joints, especially in the knees or ankles
- Meningitis — an infection of the membranes and fluid surrounding

the brain and spinal cord and the most deadly complication of valley fever

## Causes

The fungus that causes valley fever, Coccidioides immitis, thrives in the alkaline desert soils of southern Arizona, northern Mexico and California's San Joaquin Valley. It's also endemic to Utah, Nevada, New Mexico, Texas and parts of Central and South America — areas with mild winters and arid summers.

Like many other fungi, Coccidioides immitis has a complex life cycle. In the soil, it grows as a mold with long filaments that break off into airborne spores when the soil is disturbed. The spores are extremely small, can be carried hundreds of miles by the wind and are highly contagious. Once inside the lungs, the spores reproduce, perpetuating the cycle of the disease.

For more than half of infected people, this poses no problem. Their immune system effectively "walls off" the fungus, and they never develop symptoms, although they may have lingering patches of infection in their lungs. Others have varying degrees of chest pain, weakness, fever, chills, night sweats, joint aches and sometimes a rash or swollen lymph nodes — symptoms that usually go away on their own or with treatment. In a few people, the illness progresses to severe pneumonia or spreads beyond the lungs and may ultimately prove fatal.

### How global warming, snowbirds, the real estate boom and AIDS contribute to valley fever

The first case of valley fever was recognized more than a century ago. Since then, doctors have diagnosed upward of 100,000 cases a year in endemic areas. But starting in the 1990s, the incidence of valley fever increased significantly, especially in California and Arizona. A number of factors seem to have contributed to the rise in reported cases — up more than threefold between 1993 and 2003 in Arizona alone.

- **Climate change.** In desert regions, changing rainfall patterns and extended periods of drought seem to be closely associated with the upsurge in valley fever. Coccidioides, dormant during long dry spells, "blooms" when it rains and is swept into the air by anything that disturbs the soil: earthquakes, storms, farming, construction. In Arizona, most outbreaks occur in June, July, August, October and November. In California, the risk of infection is highest during the summer months, usually June through August.

- **Population growth.** During the past few decades, the Southwest has seen unprecedented growth, with a great increase in both permanent residents and winter visitors. That means large numbers of people with no natural immunity to valley fever are exposed to the



fungus. The influx of people into California during the Dust Bowl of the 1930s sparked a similar rise in valley fever outbreaks.

- **Building boom.** Unchecked growth has been one of the most troublesome consequences of the mass migration to the Sun Belt states. This has led to rampant land clearing and construction, which spew thousands of tons of fungus-laden dust into the air every year.

- **HIV/AIDS.** People with severely compromised immune systems, especially those with advanced AIDS, are at great risk of disseminated valley fever. As people live longer with AIDS, and as they relocate or travel to endemic areas, the risk of serious infection increases.

Valley fever isn't limited to humans; dogs, horses, cattle, bats, snakes, coyotes and most other animals also are susceptible to the disease. Even house cats can catch valley fever when dust seeps in around windows and doors during storms.

## Risk factors

- **Environmental exposure.** Anyone who inhales the spores that cause valley fever is at risk of infection. Some experts estimate that up to half of the people living in areas where valley fever is common have had the disease. People who have jobs that expose them to dust are most at risk — construction, road and agricultural workers, ranchers, archeologists, and military personnel on field exercises.

- **Smoking.** Smokers, especially those with scarring and thickening of lung tissue (pulmonary fibrosis), are at higher risk of valley fever than nonsmokers are.

- **Race.** For reasons that aren't well understood, people of color are more susceptible to valley fever and several times more likely to develop serious illness than whites are. Filipinos, Hispanics and blacks have the highest risk.

- **Pregnancy.** Pregnant women are vulnerable to valley fever in the third trimester and right after their babies are born.

- **Diabetes.** The rate of valley fever infection is higher among people with diabetes.

- **Weakened immune system.** Anyone with a weakened immune system — including people living with AIDS or those treated with steroids, chemotherapy or anti-rejection drugs after transplant surgery — is at high risk of valley fever as well as of serious complications of the disease. People with cancer and Hodgkin's disease also have an increased risk.

- **Age.** Older adults are more likely to develop valley fever than younger people are, possibly because their immune systems are less robust or because they have other medical conditions that affect their overall health.

## When to seek medical advice

Valley fever, even when it's symptomatic, often clears on its own. Yet for older adults and others at high risk, recovery can be slow and the risk of disseminated disease high. For that reason, it's important to seek medical care if you develop the signs and symptoms of valley fever, especially if you live in or have recently traveled to an area where this disease is common.

Be sure to tell your doctor if you've traveled to a place where valley fever is endemic and have symptoms. More and more often, people who spend a few days golfing or hiking in Arizona return home with valley fever but are never tested for the disease.

## Screening and diagnosis

Valley fever isn't diagnosed on the basis of signs and symptoms, which are usually vague and nonspecific, or on a chest X-ray, which can't distinguish valley fever from other lung diseases. Instead, a definitive diagnosis depends on finding Coccidioides spherules in infected tissue, blood or other body secretions. For that reason, you're likely to have one or more of the following tests:

- **Sputum smear or culture.** These tests check a sample of your sputum for the presence of the valley fever fungus.

- **Blood tests.** Through a blood test, your doctor can check for antibodies against the fungus that causes valley fever and determine how serious your infection is.

## Complications

Valley fever can cause a number of serious complications, especially in people living with HIV/AIDS. These complications include:

- **Severe pneumonia.** Most people recover from valley fever pneumonia with only residual scarring in their lungs. Others, mainly people of color and those with weakened immune systems, may become seriously ill.

- **Lung nodules.** A small percentage of people develop thin-walled nodules (cavities) in their lungs. Many of these eventually disappear without causing any problems, but some may rupture, causing chest



pain and difficulty breathing. A ruptured lung nodule requires the placement of a tube into the space around the lungs to remove the air, or surgery to repair the damage.

- **Disseminated disease.** This is by far the most serious complication of valley fever. If the fungus spreads throughout the body, it can leave a trail of devastation, ranging from skin ulcers and abscesses to bone lesions, severe joint pain, heart inflammation, urinary tract problems and meningitis — an infection of the membranes and fluid covering the brain and spinal cord.

## Treatment

Most people with acute valley fever don't require treatment. Even when symptoms are fairly serious, the best therapy for otherwise healthy adults is usually bed rest and fluids — the same approach used for colds and the flu. Still, doctors carefully monitor people with valley fever, and if symptoms don't improve or become worse, they may prescribe antifungal medications such as fluconazole.

Antifungal medications are also used for high-risk people or for those with chronic or disseminated disease.

In general, the antifungal drugs fluconazole and itraconazole are used for all but the most serious cases. All antifungals can have serious side effects, however, they usually go away once the medication is stopped. The most common side effects of fluconazole and itraconazole are nausea, vomiting, abdominal pain and diarrhea.

These medications control the fungus but don't destroy it, and relapses are common. For many people, a single bout of valley fever bestows lifelong immunity, but the disease can be reactivated or you can be reinfected if your immune system is weakened for any reason.

## Prevention

The few ways of preventing valley fever — wearing a mask, staying inside during dust storms, wetting the soil before digging, keeping doors and windows tightly closed — aren't particularly effective. Still, if you live in or visit areas where valley fever is common — especially Phoenix or Tucson, Arizona, and Bakersfield, California — take commonsense precautions, especially during the summer months, when the chance of infection is highest.

By Mayo Clinic Staff
Mar 17, 2006

AL 201C

# CDC-119
## SPECIAL PURPOSE LETTERS

| MILLER | T27370 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|---|
| | | JACKSON SUP CRT 108 COURT ST JACKSON CA 95642-2336 | TRUST 1/11/05 | 1/12/2005 | |
| | | LA USDC  LA CA 90012 | TRUST 1/11/05 | 1/12/2005 | |
| | | SAN FRAN 455 GOLDEN GATE AVE CA 94102 | TRUST 1/11/05 | 1/12/2005 | |
| | | SENATOR E. KENNEDY WASHINGTON D.C. 20510 | TRUST 1/11/05 | 1/12/2005 | |
| | | US SENATE CAPITOL WASHINGTON DC | TRUST 1/11/05 | 1/12/2005 | |
| | | LA ATTY GEN 300 S SPRING ST  CA 90013 | TRSUT 1/30/05 | 1/31/2005 | |
| | | LA ATTY GEN 300 S SPRING ST  CA 90013 | TRUST 1/30/05 | 1/31/2005 | |
| | | LA CRT OF APP 300 S SPRING ST 2ND FLR N TOWER LA CA 90013 | TRUST 1/30/05 | 1/31/2005 | |
| | | LA USDC  LA CA 90012 | TRUST 1/30/05 | 1/31/2005 | |
| | | LA USDC  LA CA 90012 | TRSUT 1/30/05 | 1/31/2005 | |
| | | LA USDC  LA CA 90012 | TRUST 1/30/05 | 1/31/2005 | |
| | | LA USDC  LA CA 90012 X2 ENVELOPES TAPED TOGETHER | TRUST 1/31/05 | 2/1/2005 | |
| | | SAN FRAN ATTY GEN 455 GOLDEN GATE AVE  SF, CA 94102 | TRUST 02/13/05 | 2/14/2005 | |

| MILLER | T27370 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|---|
| | | SAN FRAN PUB DEF 450 GOLDEN GATE AVE SAN FRAN CA 94102 | TRUST 02/13/05 | 2/14/2005 | |
| | | SECOND APP DIST 300 S. SPRING ST. LA CA 90012 | TRUST 02/13/05 | 2/14/2005 | |
| | | USDC 312 N. SPRING ST. LA CA 90012 | TRUST 02/13/05 | 2/14/2005 | |
| | | US SENATE CAPITOL WASHINGTON DC 20510 | TRUST 2/14/05 | 2/15/2005 | |
| | | CONGRESS SENATE ST CAPITAL WASHINGTON DC 20515 | TRUST 2/23/05 | 2/24/2005 | |
| | | CONGRESS SENATE ST CAPITAL WASHINGTON DC 20515 | TRUST 2/23/05 | 2/24/2005 | |
| | | D. FEINSTEIN US SENATE | TRUST 2/23/05 | 2/24/2005 | |
| | | SUSANVILLE SUP CRT 220 LASSEN ST #6 SUSANVILLE CA 96130 | TRUST 2/23/05 | 2/24/2005 | |
| | | BOARD OF PRISON TERMS 1515 K ST SAC, CA 95814 | TRUST 03/01/05 | 3/2/2005 | |
| | | JACKSON SUP CRT 108 COURT ST JACKSON CA 95642-2396 | TRUST 03/01/05 | 3/2/2005 | |
| | | SAN FRAN SUP CRT 350 MCALLISTER ST CA 91402 | TRUST | 3/21/2005 | |
| | | SANTA ANA SUP CRT 700 CIVIC CENTER DR WEST SANTA ANA CA 92701 | TRUST | 3/21/2005 | |
| | | US CONGRESS ST CAPITAL WASHINGTON DC 20515 H. WAXMAN | TRUST | 3/21/2005 | |
| | | US CONGRESS ST CAPITAL WASHINGTON DC 20515 T. DIVAS | TRUST | 3/21/2005 | |
| | | BOARD OF PRISON TERMS 1515 K ST SAC, CA 95814 | TRUST | 4/11/2005 | |

| MILLER | T27370 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|---|
| | | FRESNO SUP CRT 1100 VAN NESS FRESNO CA 93721 | TRUST | 4/11/2005 | |
| | | FRESNO SUP CRT 1100 VAN NESS FRESNO CA 93721 | TRSUT | 4/11/2005 | |
| | | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 4/11/2005 | |
| | | LA USDC LA CA 90012 | TRUST | 4/11/2005 | |
| | | SAC CRT OF APPEALS 900 N ST CA 95814 | TRUST | 4/11/2005 | |
| | | SAC SUP CRT 720 9TH ST CA 95814 | IND | 4/11/2005 | |
| | | SAC SUP CRT 720 9TH ST SAC, CA 95814 | TRUST | 4/11/2005 | |
| | | SAC USDC 501 I ST CA 95814 | TRUST | 4/11/2005 | |
| | | SAC USDC 501 I ST CA 95814 | TRUST | 4/11/2005 | |
| | | SAN FRAN US CRT OF APPEALS 95 7TH ST CA 94103 | TRSUT | 4/11/2005 | |
| | | LA USDC LA CA 90012 | TRUST | 4/12/2005 | |
| | | STATE CAPITOL SAC, CA 95814 | TRUST | 4/12/2005 | |
| | | N. PARRA 321 N. DOUTY SUITE B HANFORD, CA. 93230 | STAMPS | 4/22/2005 | |
| | | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 5/2/2005 | |
| | | LA SUP CRT 300 S SPRING ST CA 90013 | TRUST | 5/2/2005 | |

| MILLER | T27370 | | | |
|---|---|---|---|---|
| | | **ADDRESS** | **TYPE OF LETTER REC'D/SENT** | **SENT** | **REC'D** |

| ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|
| LA USDC  LA CA 90012 | TRUST | 5/2/2005 | |
| LA ATTY GEN 300 S SPRING ST  CA 90013 | TRUST | 5/18/2005 | |
| WASHINGTON US SUP CRT DC 20543 | TRUST | 5/18/2005 | |
| LA SUP CRT 300 S SPRING ST  CA 90013 | TRUST | 6/1/2005 | |
| LA ATTY GEN 300 S SPRING ST  CA 90013 | TRUST | 6/6/2005 | |
| WASHINGTON SUP CRT  WASHINGTON, DC | TRUST | 6/6/2005 | |
| SUSANVILLE SUP CRT 220 LASSEN ST #6 SUSANVILLE CA 96130 | TRUST | 6/16/2005 | |
| PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | TRUST | 6/17/2005 | |
| J. COSTA 2300 TULARE FRESNO, CA. 93721 | STAMP | 6/27/2005 | |
| N. PARRA 321 N. DOUTY SUITE B HANFORD, CA. 93230 | STAMP | 6/27/2005 | |
| JACKSON SUP CRT 108 COURT ST JACKSON CA 95642-2396 | TRUST | 7/18/2005 | |
| LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 7/18/2005 | |
| WASHINGTON SUP CRT  WASHINGTON, DC | TRUST | 7/22/2005 | |
| LA USDC  312 N. SPRING STREET 90012 | TRUST | 8/25/2005 | |
| SAC USDC 501 I ST  CA 95814 | TRUST | 8/25/2005 | |

| MILLER | T27370 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|---|
| | | JACKSON&ASSC. 44727 GADSEN LANCASTER, CA. 93534 | STAMP | 9/12/2005 | |
| | | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 9/12/2005 | |
| | | LA CO AUD/CONT. 500 W. TEMPLE ST, LA CA 90012 | | 9/12/2005 | |
| | | LA USDC 312 N. SPRING STREET 90012 | TRUST | 9/12/2005 | |
| | | PLO GENERAL DELIVERY, SAN QUENTIN, CA. 94964 | SAMP | 9/12/2005 | |
| | | SAN FRAN SUP CRT 455 GOLDEN GATE AVE SF, CA 94102 | TRUST | 9/12/2005 | |
| | | SAN FRAN SUP CRT 455 GOLDEN GATE AVE SF, CA 94102 W. VICKEREY | TRUST | 9/12/2005 | |
| | | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 9/21/2005 | |
| | | LA USDC 312 N. SPRING STREET 90012 | TRUST | 9/21/2005 | |
| | | BOARD OF PRISON TERMS 1515 K ST SAC, CA 95814 | STAMP | 9/22/2005 | |
| | | DIR OF CORR. POB 942883 SACTO, CA. 94282-0001 | STAMP | 9/22/2005 | |
| | | GOV A. SWARZENEGGER ST CAP SAC CA 95814 | STAMP | 9/22/2005 | |
| | | J. COSTA 2300 TULARE FRESNO, CA. 93721 | STAMP | 9/22/2005 | |
| | | N. PARRA 321 N. DOUTY SUITE B HANFORD, CA. 93230 | STAMP | 9/22/2005 | |
| | | SUSANVILLE SUP CRT 220 LASSEN ST #6 SUSANVILLE CA 96130 | TRUST | 9/22/2005 | |

| MILLER | T27370 | | | | |
|---|---|---|---|---|---|
| | **ADDRESS** | **TYPE OF LETTER REC'D/SENT** | **SENT** | **REC'D** | |
| | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 9/30/2005 | | |
| | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 9/30/2005 | | |
| | LA USDC 312 N. SPRING STREET 90012 | TRUST | 9/30/2005 | | |
| | LA USDC 312 N. SPRING STREET 90012 | TRUST | 9/30/2005 | | |
| | SAC CRT OF APPEALS 900 N ST CA 95814 | TRUST | 10/7/2005 | | |
| | SANTA ANA SUP CRT 700 CIVIC CENTER DR WEST SANTA ANA CA 92701 | TRUST | 10/17/2005 | | |
| | FRESNO CRT OF APP 2525 CAPITOL ST FRERSNO CA 923721 | TRUST | 10/24/2005 | | |
| | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 10/24/2005 | | |
| | LA CRT OF APP 300 S SPRING ST LA CA 90013 | TRUST | 10/24/2005 | | |
| | LA USDC 90012 | TRUST | 10/24/2005 | | |
| | SAN DIEGO CRT OF APP 4TH DIST 750 B ST #300 SAN DIEGO CA 92101 | TRUST | 10/31/2005 | | |
| | SAC USDC 5011 ST CA 95814 | TRUST | 11/7/2005 | | |
| | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 11/28/2005 | | |
| | LA SUP CRT 300 S SPRING ST CA 90013 | TRUST | 11/28/2005 | | |
| | LA ATTY GEN 300 S SPRING ST CA 90013 | TRUST | 11/29/2005 | | |

| T27370 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|
| | LA USDC 90012 | TRUST | 11/29/2005 | |
| | OFF OF ADMIN LAW 300 CAPITAL MALL STE1250 SAC CA 95814 | STAMP | 11/29/2005 | |
| | LA SUP CRT 210 W TEMPLE ST CA 90012 | TRUST | 12/5/2005 | |
| | PRESIDENT OF US G. BUSH WASHINGTON DC 20502 | NONE | 12/5/2005 | |
| | SAC CRT OF APPEALS 900 N ST CA 95814 | TRUST | 12/5/2005 | |
| | SAC USDC EAST DISTRICT CA 95814 | TRUST | 12/5/2005 | |
| | STATE CAPITOL SAC, CA 95814 | NONE | 12/5/2005 | |
| | DIR OF CORR., POB 942883 SACTO, CA 94282-0001 | TRUST APPRV. | 12/7/2005 | |
| | PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | TRUST | 1/3/2006 | |
| | SANTA ANA CRT OF APP 925 N SPURGEON ST SANTA ANA CA 92701 | TRUST | 1/13/2006 | |
| | C. DOOLEY1060 FULTON MALL STE 1015 FRESNO CA 93721 | STAMP | 1/27/2006 | |
| | E. CALVIN 1500 W. OLYMPIC LA, CA. 90064 | STAMPS | 1/27/2006 | |
| | A. SCHIFF WA, DC. 20515 | STAMP | 2/3/2006 | |
| | B. OBAMA WA, DC. 20515 | STAMP | 2/3/2006 | |
| | C. DOOLEY WA, DC. 20515 | STAMP | 2/3/2006 | |

| ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---------|--------------------------|------|-------|
| LA ATTY GEN 300 S SPRING ST  CA 90013 | TRUST | 2/3/2006 | |
| LA USDC  90012 | TRUST | 2/3/2006 | |
| M. WATERS CONGRESSIONAL REP. , WA. D.C. 20515 | STAMP | 2/3/2006 | |
| PRESIDENT OF US G. BUSH  WASHINGTON DC 20500 | STAMP | 2/3/2006 | |
| US SENATOR D. FEINSTEIN WA. DC 20510 | STAMP | 2/3/2006 | |
| US SENATOR J. BIDEN WA. DC 20510 | STAMP | 2/3/2006 | |
| US SENATOR T. KENNEDY WA, DC. 20510 | STAMP | 2/3/2006 | |
| FSC FRESNO SUP CRT 1100 VAN NESS 93724 | TRUST | 2/6/2006 | |
| LA ATTY GEN 300 S SPRING ST  CA 90013 | TRUST | 2/6/2006 | |
| LA USDC  90012 | TRUST | 2/6/2006 | |
| SAC ATTY GEN 1300 I ST  SAC, CA 94244 B, LOCKYER | TRUST | 2/6/2006 | |
| SAC ATTY GEN 1300 I ST  SAC, CA 95814 | TRUST | 2/6/2006 | |
| SAC USDC 501 I ST  CA 95814 | TRUST | 2/6/2006 | |
| LA SUP  CRT 300 S SPRIG ST LA, CA 90013 | TRUST | 2/27/2006 | |
| MADERA SUP CRT 209 W YOSEMITE AVE MADERA, CA 93637 | TRUST | 2/27/2006 | |

| MILLER | T27370 | | | | |
|---|---|---|---|---|---|
| | | **ADDRESS** | **TYPE OF LETTER REC'D/SENT** | **SENT** | **REC'D** |
| | | SAC SUP CRT 95814 | TRUST | 2/27/2006 | |
| | | MADERA DIST ATTY 209 W YOSEMITE AVE CA 93637/ INMATE REFUSED TO AFFIX POSTAGE FOR CONFIDENTIAL MAIL | NONE | 3/1/2006 | |
| | | SAC DIST ATTY CA 95814/INMATE REFUSED TO AFFIX POSTAGE FOR CONFIDENTIAL MAIL | NONE | 3/1/2006 | |
| | | LA ATTY GEN 300 N. SPRING ST , CA 90013 | TRUST | 3/10/2006 | |
| | | LA USDC  90012 | TRUST | 3/10/2006 | |
| | | HALL OF ADMIN 500 W. TEMPLE LA, CA. 90012 | STAMPS | 3/13/2006 | |
| | | HALL OF ADMIN 500 W. TEMPLE LA, CA. 90012 CO SUPERVISOR | STAMPS | 3/13/2006 | |
| | | E. CALVIN 1500 W. OLYMPIC LA, CA. 90064 | STAMPS | 3/14/2006 | |
| | | LA ATTY GEN 300 N. SPRING ST , CA 90013 | TRUST | 3/20/2006 | |
| | | LA USDC  312 N. SPRING STREET 90012 | TRUST | 3/20/2006 | |
| | | LA ATTY GEN 300 N. SPRING ST , CA 90013 | TRUST | 3/27/2006 | |
| | | LA USDC CLERK 312 N SPRING ST CA 90012 | TRUST | 3/27/2006 | |
| | | SAC USDC 501 I ST  CA 95814 | TRUST | 3/27/2006 | |
| | | LA ATTY GEN 300 N. SPRING ST , CA 90013 | TRUST | 3/29/2006 | |
| | | LA USDC CLERK 312 N SPRING ST CA 90012 | TRUST | 3/29/2006 | |

| MILLER | T27370 | | | |
|---|---|---|---|---|
| | **ADDRESS** | **TYPE OF LETTER REC'D/SENT** | **SENT** | **REC'D** |
| | LA ATTY GEN 300 N. SPRING ST , CA 90012X2 | TRUST | 4/24/2006 | |
| | LA SUP CRT 300 S SPRING ST CA 90012 | TRIST | 4/24/2006 | |
| | RIVERSIDE CRT OF APPEAL 3389 TWELFTH ST CA 92501 | TRUST | 4/24/2006 | |
| | RIVERSIDE DIST ATTY 4050MAIN ST RIVERSIDE, CA 92501 | TRUST APPROVED | 4/24/2006 | |
| | RIVERSIDE SUP CRT 4050 MAIN ST RIVERSIDE, CA 92501 | TRUST | 4/24/2006 | |
| | SAC USDC 5011 ST  CA 95814 | TRUST | 4/24/2006 | |
| | LA ATTY GEN 300 N. SPRING ST , CA 90012 | TRUST | 4/26/2006 | |
| | LA USDC CLERK 312 N SPRING ST CA 90012 | TRUST | 4/26/2006 | |
| | LA USDC CLERK 312 N SPRING ST CA 90012 | TRUST | 5/1/2006 | |
| | J. COSTA 2300 TULARE FRESNO, CA, 93721 | STAMPS | 5/5/2006 | |
| | SAC INSPECT GEN POB34780 CA 95834-8780 | TRUST | 5/5/2006 | |
| | SAC USDC 5011 ST  CA 95814 | TRUST | 5/5/2006 | |
| | J. COSTA855 M.STREET FRESNO, CA 93821 | STAMPS | 5/8/2006 | |
| | MAYOR OF LA VILLARIGAS 500 S. SPRING ST LA, CA 90012 | STAMPS | 5/8/2006 | |
| | B. LOCKYEAR 300 S SPRING ST LA CA 90012 | TRUST | 5/12/2006 | |

| MILLER | T27370 | | | | |
|--------|--------|---|---|---|---|
| | **ADDRESS** | **TYPE OF LETTER REC'D/SENT** | **SENT** | **REC'D** | |
| | USDC 312 N. SPRING STR LA CA 90012 | TRUST | 5/12/2006 | | |
| | J. COSTA855 M.STREET FRESNO, CA 93821X2 | STAMPS | 5/22/2006 | | |
| | LANCASTER SUP CRT 1040 W AVE J. LANCASTER, CA 93534 | TRUST | 5/22/2006 | | |
| | G. GORDON 1950 SAWTELLE BLVD STE310 LA CA 90025 | STAMPS | 6/5/2006 | | |
| | GOV CLAIM BOARD POB 3035 SAC CA 95812-3035 | TRUST | 6/5/2006 | | |
| | LANCASTER SUP CRT 42011 4TH ST CA 93531 | TRUST | 6/5/2006 | | |
| | SAN FRAN CRT OF APPEAL POB 193939 SF, CA 94119 | TRUST | 6/5/2006 | | |
| | G. GORDON 1950 SAWTELLE BLVD STE310 LA CA 90025 | STAMPS | 6/15/2006 | | |
| | LA MAYOR ANTONIO VILLARAZGAS 500 W TEMPLE ST LA CA 90012 | STAMP | 6/16/2006 | | |
| | J. COSTA WASHINGTON,DC 20515 | STAMPS | 7/17/2006 | | |
| | G. GORDON 1950 SAWTELLE BLVD STE310 LA CA 90025 | STAMP | 8/7/2006 | | |
| | GOV A. SWARZENEGGER ST CAP SAC CA 95814 | TRUST APPROVED | 8/11/2006 | | |
| | LA ATTY GEN 300 N. SPRING ST , CA 90012 | TRUST | 8/11/2006 | | |
| | LA USDC CLERK 312 N SPRING ST CA 90010 | TRUST | 8/11/2006 | | |
| | CONGRESSWOMAN D. WATSON WASHINGTON DC 20515 | STAMPS | 8/17/2006 | | |

| ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|
| FBI WASHINGTON,DC 20530 | STAMPS | 8/17/2006 | |
| J. COSTA WASHINGTON,DC 20515 | STAMPS | 8/17/2006 | |
| SENATOR D. FEINSTEIN US SENATE WASHINGTON DC 20510 | STAMPS | 8/17/2006 | |
| SENATOR H. CLINTON US SENATE WASHIGTON D.C. 20510 | STAMPS | 8/17/2006 | |
| LA ATTY GEN 300 N. SPRING ST , CA 90012 | TRUST | 8/23/2006 | |
| LA USDC CLERK 312 N SPRING ST CA 90012 | TRUST | 8/23/2006 | |
| LA ATTY GEN 300 N. SPRING ST , CA 90012 | TRUST | 9/8/2006 | |
| LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | 9/8/2006 | |
| SENATOR B. OBAMA WASHINGTON, DC NO ZIP | STAMP | 9/15/2006 | |
| SENATOR H. CLINTON US SENATE WASHIGTON D.C. | STAMP | 9/15/2006 | |
| FSC FRESNO SUP CRT 1100 VAN NESS 93724 | STAMPS | 9/18/2006 | |
| LA ATTY GEN 300 N. SPRING ST , CA 90012 | STAMP | 10/11/2006 | |
| LA USDC 312 N SPRING ST LA, CA 90012 | STAMPS | 10/11/2006 | |
| SENATOR B. OBAMA WASHINGTON, DC 20515 | STAMPS | 10/11/2006 | |
| SENATOR D. FEINSTEIN US SENATE WASHINGTON DC 20510 | STAMPS | 10/11/2006 | |

| MILLER | T27370 | | | |
|---|---|---|---|---|
| | **ADDRESS** | **TYPE OF LETTER REC'D/SENT** | **SENT** | **REC'D** |
| | SENATOR H. CLINTON US SENATE WASHIGTON D.C. 20510 | STAMPS | 10/11/2006 | |
| | LA ATTY GEN 300 N. SPRING ST , CA 90012 | STAMP | 10/27/2006 | |
| | LA USDC CLERK 312 N SPRING ST CA 90012 | STAMP | 10/27/2006 | |
| | STATE CAPITOL SAC ,CA 94249/STATE TREASURER | STAMP | 10/31/2006 | |
| | FRESNO SUP CRT 1100 VAN NESS FRESNO CA 93721 | STAMP | 11/13/2006 | |
| | LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | 11/13/2006 | |
| | PASADENA SUP CRT 91101 | STAMP | 11/13/2006 | |
| | SAN FRAN CRT OF APPEAL 95 7TH ST POB193939 CA 94119X2 | TRUST | 11/13/2006 | |
| | US FEDERAL CRT 717 MADISON PLACE NW WASHINGTON, DC 20005 | TRUST | 11/21/2006 | |
| | LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | 1/4/2007 | |
| | SAC USDC 501 I ST CA 95814 | TRUST | 1/4/2007 | |
| | GOV A. SWARZENEGGER SAC CA 95814 | STAMPS | 1/8/2007 | |
| | SENATOR J. COSTA 855 M ST. FRESNO ,CA 93721 | STAMPS | 1/8/2007 | |
| | COUNTY SUPERVISOR 500 W. TEMPLE ST. LA, CA 90012 | STAMPS | 1/22/2007 | |
| | LA USDC CENTRAL 312 N SPRING ST CA 90012 | STAMP | 1/22/2007 | |

| MILLER | T27370 | | | |
|---|---|---|---|---|
| | **ADDRESS** | **TYPE OF LETTER REC'D/SENT** | **SENT** | **REC'D** |
| | SAN BERNARDINO SUP CRT 351 N ARROWHEAD AVE SAN BERNARDINO    CA 92415 | STAMPS | 1/22/2007 | |
| | SAN BERNARDINO DIST ATTY 412 HOSPITALITY LANE  SAN BERNARDINO A 92415 | STAMPS | 1/23/2007 | |
| | IRS LEGAL OFFICE 2402 EMPIRE ST. BLOOMINGTON,IL 61704 | STAMP | 1/31/2007 | |
| | LA ATTY GEN 300 N. SPRING ST , CA 90012 | TRUST | 2/9/2007 | |
| | LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | 2/9/2007 | |
| | LA ATTY GEN 300 N. SPRING ST , CA 90012 | TRUST | 2/21/2007 | |
| | LA USDC CENTRAL 312 N SPRING ST CA 90012 | TRUST | 2/21/2007 | |
| | FBI 1735 E ST. FRESNO,C A 93720/REED | STAMP | 3/5/2007 | |
| | FBI 1735 E ST. FRESNO,C A 93720/REED | STAMPS | 3/12/2007 | |
| | PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | TRUST | 3/13/2007 | |
| | BOARD OF SUPERVISORS 500 W TEMPLE ST LA CA 90012 | STAMP | 3/20/2007 | |
| | SENATOR J. SCOTT 215 MARENGO AVE. PASADENA, CA 91101 | STAMP | 4/2/2007 | |
| | US ATTY GEN  WASHINGTON D.C 20510 | STAMPS | 4/20/2007 | |
| | US CONGRESS  1004 LONGWORTH HOUSE OFFICE BLD. WASHINGTON,DC 20515/COSTA | STAMPS | 4/20/2007 | |
| | US SENATE CHAIRMAN LEAHY WASHINGTON, DC 20510 | STAMPS | 4/24/2007 | |

| MILLER | T27370 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|---|
| | | PLO GENERAL DELIVERY, SAN QUENTIN, CA. 94964 | METERED | 4/30/2007 | |
| | | PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | STAMPS | 5/1/2007 | |
| | | PRESIDENT OF US G. BUSH WASHINGTON DC 20543 | STAMPS | 5/2/2007 | |
| | | OMBUDSMAN 510 S. VERMONT LA, CA. 90020 | TRUST APPROVED | 5/16/2007 | |
| | | LA SUPERVISOR 866 KENNETH HAHN HALL LA, CA 90012 | STAMPS | 5/18/2007 | |
| | | PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | STAMPS | 5/18/2007 | |
| | | PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | TRUST | 5/21/2007 | |
| | | LA SUPERVISOR 866 KENNETH HAHN HALL LA, CA 90012 | STAMP | 6/12/2007 | |
| | | LA ATTY GEN 300 N. SPRING ST, CA 90013 | STAMP | 6/29/2007 | |
| | | LA SECOND APP CRT 300 S. SPRING ST LA CA 90013 | STAMPS | 6/29/2007 | |
| | | MAYOR OF LA VILLARIGAS 200 N. SPRING ST LA, CA 90012 | STAMP | 7/19/2007 | |
| | | SENATOR D. FEINSTEIN ONE POST ST STE 2450 SF CA 94104 | STAMPS | 7/19/2007 | |
| | | LA ATTY GEN 300 N. SPRING ST, CA 90013 | STSMPS | 7/20/2007 | |
| | | LA SUP CRT 300 S SPRING ST CA 90013 | STAMPS | 7/20/2007 | |
| | | LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | 7/20/2007 | |

| ,ILLER | T27370 | ADDRESS | TYPE OF LETTER | REC'D/SENT | SENT | REC'D |
|--------|--------|---------|----------------|------------|------|-------|
| | | ASSEMBLY MEMBER C. LIU 214 MARENGO AVE. PASADENA,C A 91101 | STAMPS | | 7/27/2007 | |
| | | JUDICIAL PERFORMANCE 350 MCCALISTER SF, CA 94102 | STAMPS | | 7/27/2007 | |
| | | PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | STAMPS | | 7/27/2007 | |
| | | SENATOR J. SCOTT 215 MARENGO AVE. PASADENA, CA 91101 | STAMPS | | 7/27/2007 | |
| | | STATE SENATE SAC CA 95814 | STAMPS | | 7/27/2007 | |
| | | LA ATTY GEN 300 N. SPRING ST , CA 90013 | TRUST | | 8/6/2007 | |
| | | LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | | 8/6/2007 | |
| | | GOV A. SWARZENEGGER SAC CA 95814 | STAMPS | | 8/13/2007 | |
| | | SAC ATTY GEN 944255 SAC, CA 94244 | STAMPS | | 8/13/2007 | |
| | | SAN FRAN USDC 450 GOLDEN GATE AE SF, CA 94102 . HENDERSON | STAMPS | | 8/13/2007 | |
| | | STATE CAPITOL SAC ,CA 995814 | STAMPS | | 8/13/2007 | |
| | | ATT GENRAL 300 S. SPRING ST, LA CA 90013 | TRUST | | 8/17/2007 | |
| | | USDC 312 N. SPRING ST LA 90012 | TRUST | | 8/17/2007 | |
| | | USDC 450 GOLDEN GATE AVE  SAN FRAN CA 94102 | TRUST | | 8/17/2007 | |
| | | LA ATTY GEN 300 N. SPRING ST , CA 90013 | TRUST | | 8/23/2007 | |

| MILLER | T27370 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|---|
| | | LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | 8/23/2007 | |
| | | PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | TRUST | 8/29/2007 | |
| | | LA ATTY GEN 300 N. SPRING ST , CA 90013 | TRUST | 9/7/2007 | |
| | | LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | 9/7/2007 | |
| | | SENATOR D. FEINSTEIN ONE POST ST STE 2450 SF CA 94104 | STAMPS | 9/13/2007 | |
| | | US FEDERAL CRT 717 MADISON PLACE NW WASHINGTON, DC 20005 | TRUST | 9/13/2007 | |
| | | PASADENA CRT OF APPEALS 125 S GRAND AVE PASADENA, CA 91105 | STAMPS | 10/12/2007 | |
| | | CONGRESSMAN A. SCHIFF 35 S. RAYMOND AVE PASADENA, CA 91105 | STAMPS | 10/15/2007 | |
| | | PASADENA CLERK 125 S GRAND AVE PASADENA, CA 90015 US CRT OF APP. | STAMPS | 10/19/2007 | |
| | | SAN FRAN CRT OF APPEAL POB 193939 SF, CA 94119 | STAMP | 1/2/2008 | |
| | | LA USDC CENTRAL 312 N SPRING ST CA 90012 | STAMP | 2/1/2008 | |
| | | SAN FRAN CRT OF APPEALS POB 193939 SAN FRAN CA 94119 | STAMP | 2/1/2008 | |
| | | US OVERSIGHT COMMITTEE WASHINGTON, DC 20515 | STAMPS | 4/4/2008 | |
| | | CONGRESSMAN J. COSTA 855 M ST. FRESNO , CA 93721 | STAMP | 5/5/2008 | |
| | | SAN FRAN CRT OF APPEAL POB 193939 SF, CA 94119 | STAMPS | 5/5/2008 | |

| MILLER | T27370 | ADDRESS | TYPE OF LETTER REC'D/SENT | SENT | REC'D |
|---|---|---|---|---|---|
| | | PRESIDENT OF US G. BUSH WASHINGTON DC 20500 | STAMPS | 10/3/2008 | |
| | | LA SUP CRT 300 S SPRING ST CA 91101 | STMAPS | 11/10/2008 | |
| | | DEPT OF JUSTICE SOLICITOR GEN. 950 PENNSYLVANIA AVE, RM 5614 WASHINGTON, DC 20530-0001 | STAMP | 12/2/2008 | |
| | | LANCASTER SUP CRT 42011 4TH ST CA 93531 | STAMP | 1/2/2009 | |
| | | GOV A. SWARZENEGGER SAC, CA 95814 | TRUST APPROVED | 1/16/2009 | |
| | | PASADENA SUP CRT 300 E. WALNUT PASADENA, CA 91101 | TRUST | 1/16/2009 | |
| | | SAN FRAN CRT OF APPEAL POB 193939 SF, CA94119 | TRUST | 1/16/2009 | |
| | | STATE CAPITOL SAC, CA 95814 | TRUST APPROVED | 1/16/2009 | |
| | | PRESIDENT OF US OBAMA 1600 PENNSYLVANIA AVE WASHINGTON, DC 20500 | TRUST APPROVED | 1/20/2009 | |
| | | VICE PRESIDENT BIDEN 1600 PENNSYLVANIA AVE WASHINGTON, DC 20500 | TRUST APPROVRD | 1/21/2009 | |
| | | LA SUP CRT 111 HILL ST LA.C A 90012 | TRUST | 1/23/2009 | |
| | | PRESIDENT OF US B. OBAMA 1600 PENSYLVANIA AVE WASHINGTON, DC 20510 | STAMPS | 1/26/2009 | |
| | | CA LEGISLATURE STATE CAPITOL SAC, CA 95814 | STAMP | 1/27/2009 | |
| | | LA USDC 312 N SPRING ST LA, CA 90012 | TRUST | 1/27/2009 | |
| | | MAYOR OF LA VILLARIGAS 200 N. SPRING ST LA, CA 90012 | STAMP | 1/27/2009 | |

| MILLER | T27370 | | |
|---|---|---|---|
| | **ADDRESS** | **TYPE OF LETTER REC'D/SENT** | **SENT** | **REC'D** |
| | NAACP 4805 MOUNT HOPE DR BALTIMORE, MD 21215 | STMAPS | 1/27/2009 | |
| | OMBUDSMAN 510 S. VERMONT LA, CA. 90020 | STAMPS | 1/27/2009 | |
| | PASADENA CRT JUDGE SCHWARTZ 300 E WALNUT ST CA 91101-1566 | TRUST | 1/29/2009 | |
| | ATASCADERO STATE HOSPITAL POB 7004 ATASCADERO CA 93423 | STAMPS | 2/13/2009 | |